DALLMANN, Respondent, vs. KLUCHESKY, Appellant.

*September 16—November 9, 1938.*

170

For the appellant there was a brief by *Walter J. Mattison,* city attorney, and *Carl F. Zeidler* and *Leo B. Hanley,* assistant city attorneys, and oral argument by *Mr. Zeidler.*

*Joseph A. Padway* and *Michael Klein,* both of Milwaukee, for the respondent.

FAIRCHILD, J. Under the laws of this state, the city of Milwaukee may enact ordinances prohibiting gambling. The legislative branch of the city government may also, within constitutional limits, enact ordinances which classify as a nuisance the keeping in public places of devices readily adaptable to gambling.

The police officials of the city, acting under section 1069 of the city ordinances, have taken into their possession a "nickel-in-the-slot" machine. They found it in a restaurant

where it had been placed by the owner with the consent of the restaurant proprietor, under an agreement to divide the earnings on a sixty-forty basis. Upon the front of the machine appeared the legend, "A Game of Skill—For Amusement Only." It is admitted by the police that there is no evidence that bets were placed upon the results of the operation of the machine. No arrest of any person was made, and there is no proceeding pending in the district court of Milwaukee county, which has jurisdiction to determine whether violations of ordinances have occurred.

Two questions are presented. One relates to the authority or power of the common council to enact the ordinance. The other relates to the scope of interpretation of the ordinance. As suggested at the beginning of this opinion, there is a recognized doctrine that the possession of certain articles may be forbidden upon the theory that they lend themselves to illegal uses and are therefore a public nuisance. Familiar subjects for the exercise of this police power are liquor and narcotics, firearms, and gambling devices. Ordinarily the evil or dangerous character of the outlawed articles is clear and obvious, but the same power may be used to abate a public nuisance arising out of the use or possession of articles which are entirely harmless when properly used or controlled.

In *Herman v. Mackenzie* (1928), 197 Wis. 281, 283, 221 N. W. 758, the plaintiff brought replevin to recover a dog which had been caught running deer. The court held that the replevin could not be maintained, saying:

"It is a general rule that articles which are by law a public nuisance *per se* are not lawful subjects of property which the law protects and such property may be seized and destroyed without violating any constitutional provision. . . . The law has therefore declared such an animal a public nuisance. It is considered, therefore, that the plaintiff has no right of property in the animal and that an action of replevin will not

lie to restore possession of the dog to the owner under the admitted facts of this case."

An illustration of the lengths to which the legislature and the courts have gone in protecting the public interest may be found in *Commonwealth v. Savage* (1892), 155 Mass. 278, 29 N. E. 468. A statute, evidently designed to protect the lobster industry of the state, made it unlawful for anyone to have in his possession a lobster less than ten and one-half inches in length. The defendant imported lobsters from the British provinces, and upon finding that some were below the legal size, returned them alive to tidewater. Nevertheless it was held that he was liable to a fine of $5 for each undersized lobster, mere possession having been declared an offense.

A leading case on the subject of confiscation under state police power is *Lawton v. Steele* (1894), 152 U. S. 133, 142, 14 Sup. Ct. 499, 38 L. Ed. 385. A fish commissioner was sued for the conversion of fish nets seized by a warden. The court said:

"It is said, however, that the nets are not in themselves a nuisance, but are perfectly lawful acts of manufacture, and are ordinarily used for a lawful purpose. This is, however, by no means a conclusive answer. Many articles, such, for instance, as cards, dice, and other articles used for gambling purposes, are perfectly harmless in themselves, but may become nuisances by being put to an illegal use, and in such cases fall within the ban of the law and may be summarily destroyed. . . . The power of the legislature to declare that which is perfectly innocent in itself to be unlawful is beyond question (*People v. West,* 106 N. Y. 293), and in such case the legislature may annex to the prohibited act all the incidents of a criminal offense, including the destruction of property denounced by it as a public nuisance."

It is argued that sec. 66.05 (6), Stats., has pre-empted the field of regulation of gambling devices and results in a limi-

tation of the city's power to act in the matter. Sec. 66.05 (6) provides as follows:

"The board or council of any town, village, or city may prohibit all forms of gambling and fraudulent devices and practices and cause the seizure of anything devised solely for gambling or found in actual use for gambling and the destruction thereof after a judicial determination of the character or use."

The argument is that sec. 66.05 (6), Stats., deals with a matter of state-wide concern, and that the ordinance in question is void because it conflicts with the legislative enactment. This contention is based upon the home-rule amendment, which was proposed by the 1921 legislature and is now sec. 3 of art. XI of the constitution. By its terms, cities and villages are empowered to determine their local affairs and government, subject only to the constitution and to such enactments of the legislature of state-wide concern as may with uniformity affect every city or every village.

Sec. 62.11 (5), Stats., provides in part as follows:

"Except as elsewhere in the statute specifically provided, the council . . . shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

By ordinance, sec. 62.11 (5), Stats., has been adopted by the city of Milwaukee, and is now section 6.04 of the city charter. In view of this charter provision, which the city had power to adopt under sec. 62.03, Stats., there can be no question of the general power of the council to enact ordinances protecting the welfare of the youth of Milwaukee, and we do not think that this power is limited by sec. 66.05

(6), which is in terms a grant of power rather than a limitation.

Sec. 66.05 (6), Stats., as enacted by ch. 270, Laws of 1905, and amended by sec. 18, ch. 396, Laws of 1921, appears to be an enactment of state-wide concern affecting with uniformity every city, but it does not appear to be inconsistent with section 1069 of the Milwaukee ordinances. In so far as the city has prohibited the keeping of machines and devices without regard to actual use for gambling purposes, it has imposed an additional regulation which covers a situation not covered by the language of sec. 66.05 (6). But it does not follow that the prohibition in the ordinance is inconsistent with sec. 66.05 (6) merely because it is broader than the prohibition there authorized.

In *Hack v. Mineral Point* (1931), 203 Wis. 215, 233 N. W. 82, it was held that the city of Mineral Point had power to regulate the liquor traffic although the state law on that subject had been repealed. The theory of that case is that cities may go further than the state has seen fit to go in certain matters of regulation. If the city of Milwaukee, by the ordinance in question, has added to the regulation authorized by sec. 66.05 (6) an additional prohibition designed to meet a local situation, it has only done what it may do under the rule of *Hack v. Mineral Point,* and it does not appear that in so doing the city has interfered with any intention on the part of the state legislature that city ordinances relating to gambling should be uniform in their scope or effect.

For the purposes of this case the ordinance has been construed as if the prohibition upon the keeping and use of the machine were limited to public resorts or places in which numbers of people may gather. This construction is in accord with the doctrine of *ejusdem generis.* If the council meant to extend the prohibition to every part of the city

without regard to the public or private character of the premises involved, there might be some doubt as to the reasonableness of the ordinance. But that question need not be dealt with, because the machine seized by the police was designed for a public commercial use and was found in a public restaurant. The question of the private use of amusement devices is therefore not before us.

This machine when set up in a place of public resort is by the ordinance placed under condemnation as a nuisance. It has not become a gambling device, but it was a nuisance by reason of its then situation, its accessibility to any and all comers, and its tendency to suggest gaming. The keeping of such a device causes confusion, making it more difficult to suppress gambling.

In *Murphy v. California* (1912), 225 U. S. 623, 629, 32 Sup. Ct. 697, 56 L. Ed. 1229, the court sustained an ordinance which prohibited the keeping of any hall or room in which billiard or pool tables were kept for hire or public use. The defendant, who was prosecuted under the ordinance, offered to prove that he had conducted his business in an orderly and honest way, but the court said:

"The fact that there had been no disorder or open violation of the law does not prevent the municipal authorities from taking legislative notice of the idleness and other evils which result from the maintenance of a resort where it is the business of one to stimulate others to play beyond what is proper for legitimate recreation. The ordinance is not aimed at the game but at the place; and where, in the exercise of the police power, the municipal authorities determine that the keeping of such resorts should be prohibited, the courts cannot go behind their finding and inquire into local conditions; or whether the defendant's hall was an orderly establishment, or had been conducted in such manner as to produce the evils sought to be prevented by the ordinance."

Other cases in which there was a similar holding are *Village of Atwood v. Otter* (1921), 296 Ill. 70, 129 N. E. 573,

and *City of Shreveport v. Dale* (1921), 149 La. 439, 89 So. 408.

The ordinance declares that the morals of youth are being affected by the widespread distribution of machines and devices which cater to the gambling instinct. The council was of the opinion that in order to remedy this evil it was necessary not only to lock the inner door which would admit the youth of the city to recognized gambling devices prohibited by state law, but also to bar the outer door which would let them enter the vestibule of amusement devices tending to encourage the slot-machine habit. We agree with the respondent that the council cannot by a declaration in the ordinance change the character of the machine in question so as to make it a gambling device when in fact it is not, but it does not follow that the city has not in effect declared that slot machines in certain locations constitute a public nuisance.

In *Mullen & Co. v. Moseley* (1907), 13 Idaho, 457, 469, 90 Pac. 986, the court said:

"It has been urged by counsel for appellants that in order to authorize the destruction of these machines it was necessary for the legislature to declare them a nuisance. The legislature has in effect done so. It has prohibited their use in any manner or form, and has also directed that when any such instruments are found within this state, they shall be seized and destroyed. Making their use a crime and rendering them incapable of any legitimate use, reduces them to the condition and state of a public nuisance which they clearly are. This amounts as effectually to declaring them a nuisance as if the word 'nuisance' itself had been used in the statute."

Possession of coin-operated machines in public places has been declared unlawful, and offenders are to be prosecuted. However, in section 1069 of the city ordinances there is no provision for the destruction of the offending machines, and

since the machine in question is of a kind permitting of lawful use elsewhere, it ceases to be a nuisance upon its removal from the proscribed location. The occasion for seizure by the police is the necessity for preserving evidence, but in the present case there is no prosecution pending. If there were, replevin would not be a proper procedure until the court in which the prosecution was pending had disposed of the matter. *Triangle Mint Corp. v. Horgan* (1929), 133 Misc. 802, 233 N. Y. Supp. 570.

The machine in question, if actually used for gambling, offends against section 1068 of the city ordinances, and may be seized and destroyed. The same machine in the same place if kept only for amusement is a nuisance, but only because of its presence in a place of the character described in the ordinance.

Section 1069 of the city ordinances does not warrant destruction after seizure. The machine not being a gambling device *per se,* and the record disclosing no occasion for holding it as evidence, the civil and circuit courts were correct in ruling that replevin was a proper proceeding, and that the plaintiff was entitled to a return of the machine.

*By the Court.*—Judgment affirmed.