Fritz, J.
 

 Upon the trial and likewise on this review, pursuant to the writ of error obtained on behalf of the state under sec. 358.12 (8), Stats., of certain rulings adverse on the trial, the principal issue raised is whether or'not the pinball machine in question is, as a matter of law, under sec. 348.09, Stats., such a “device, scheme, contrivance or thing adapted,, suitable, devised, designed or which can or shall be used for gambling purposes” that “any person who shall knowingly suffer or permit” such machine “to be set up', kept, managed or used, or any gambling or betting therewith, thereon or by means thereof in any house, building ... or premises by him owned, occupied or controlled shall be punished by imprisonment” as provided,in that statute. The learned circuit judge evidently concluded that the machine could not be held to be, as a matter of law, a “device, . . . contrivance or thing adapted, suitable, . . . designed or which can ... be used for gambling purposesand in accordance with that conclusion the court refused to instruct the jury in the respects stated in the following numbered requests submitted by the state, to wit: (1) that “The pinball machine . . . was, at the. time charged, a contrivance and a thing” adapted “for gambling purposes, and set up and kept in the tavern premises.”
 

 “2) Same as (1), except substitute ‘suitable’ for ‘adapted.’
 

 “3) Same as (1), except substitute ‘devised’ for ‘adapted.’
 

 “4) Same as (1), except substitute ‘designed’ for ‘adapted.’
 

 “5) Same as (1), except substitute ‘which could be used’ for ‘adapted.’
 

 “6) 7) 8) 9) & 10) same as 1) to 5) respectively, except add ‘as a matter of law’ at beginning of sentence.
 

 
 *411
 
 “11) In order to establish defendant’s guilt it is sufficient for the state to prove that defendant knowingly suffered or permitted the pinball machine (exhibit one) to be set up or kept in the tavern premises.
 

 “12) It is not necessary for the state to prove that any payoff was actually made to either of the police officers in this case.
 

 “13) It is not necessary for the state to prove that any payoff was actually made to any person whatsoever.
 

 “14) It is not necessary for the state to prove pay-off by anyone to anyone in connection with the play of the pinball machine (exhibit one).
 

 “15) If pinball machine ... is so constructed as to be naturally used for gambling purposes, it is a construction, device, contrivance or thing which can be so- used within the meaning of the statute.
 

 “16) The fact that the pinball machine . . . may be used for nongambling purposes does not prevent it from being a construction, contrivance, device or thing, which is adapted, suitable, devised or designed or which can be used for gambling purposes.”
 

 Instead, however, of instructing as thus requested by the state, the court charged that the only question for the jury to determine was “Did the defendant . . . unlawfully and knowingly suffer and permit the pinball machine for gambling in that certain building.” Thus it evidently was also the court’s conclusion that in order to establish a violation of sec. 348.09, Stats., the state had to also prove, in addition to the other essential elements, that the defendant actually suffered and permitted the gambling device to be used for gambling.
 

 The machine in question is an exhibit in the case and its construction and mechanism, and the various purposes and the manner of operation and manipulation thereof were described and explained in detail by the testimony on the trial of an apparently competent and well-qualified witness. In addition to that testimony, we had the opportunity to observe during the course of the.hearing a demonstration of the mechanism and
 
 *412
 
 operation of the machine by that witness under the direction of the counsel in the case. No useful purpose will be served by describing in detail its complicated mechanism, the various functions and the possible adjustments thereof by which its operation can be controlled by the owner greatly to his pecuniary advantage and the loss of the players. It suffices here to note that in its essential features, operation, and the control thereof, the machine is apparently, so far as here material, substantially similar to the machine which was involved and described in
 
 People v. Gravenhorst,
 
 32 N. Y. Supp. (2d) 760, 768-771, with the exception of the description on pages 768 and 769 in relation to the “second method of scoring . . . fashioned after a boxing match.”
 

 The similar features in the mechanism, adjustments, and operation of the machines involved in the
 
 Gravenhorst Case, supra,
 
 and in this case, so far as here material, in view of the state’s contentions that those features clearly establish that the machine is a gambling device, as a matter of law, are the following: Upon the player inserting a nickel in the slot SO' that he can, by operating a plunger, drive five metal balls onto the higher end of a sloping playing field, — on which there are various obstructions, which divert each ball in its downward progress,- — each ball hits various electrically connected devices, which are in turn connected with bells and lights and cause various increasing scores to- appear in the so-called “visible” numbers on the electrically lit up vertical backboard of the machine. The scores which thus appear are of two kinds,
 
 i. e.,
 
 so-called “visible” numbers, and “hidden” numbers. The “visible” numbers can be seen at all times and are. large in size and in denomination. They are recorded in units of thousands and light up progressively from 1,000 to 79,000; and practically every play of the machine will result in a score of several thousand in these numbers, but the score will seldom reach 41,000, which is the minimum critical score required to obtain a “hidden” number. The “hidden” numbers are small
 
 *413
 
 in size and in denomination, — recording in units of from 1 to 77, — and cannot be seen unless lighted from behind as a result of a “win” in play. These are obtained in' about only three out of fifty games and, in general, will appear if, with the five balls, the player obtains a critical score of 41,000 or more, or if they cause all eight of certain obstructions to be lighted. However, the appearance of the “hidden” numbers is subject to the control and setting by the owner of devices which are in the locked interior of the machine and accessible only to him, and by which he can and does reduce or eliminate the players’ chance of obtaining a “hidden” number,
 
 i. e.,
 
 of winning. So far as general operation is concerned, the play of the machine is upon and governed by chance, which is the predominating if not the only element.
 

 The machine is also provided with automatic free-play mechanisms, the function of which is to automatically permit the operation so as to enable the player to have a free play upon obtaining a' winning number. The automatic free-play mechanism is inside of the machine and can be connected and the machine readily converted into a free-play device by the owner, or it can be disconnected by the latter, as it was at the time it was seized by the police. At that time there was inside the machine also* a meter to- register the exact number of times the “hidden” numbers appear; but which did not register the number of nickels inserted into the machine, or the times it was played. This meter likewise could be connected or disconnected by the owner; and it was connected when the police seized the machine. The state contends that as the meter records only the “hidden” numbers, which are the winning numbers, it serves to record the number of nickels won and received by the player as “pay-offs” made to him by the person in.control of the machine and premises on which it is being played; and that as by such playing the player can win free plays, which have value (see
 
 Milwaukee v. Burns,
 
 225 Wis. 296, 303, 274 N. W. 273;
 
 Milwaukee v.
 
 Johnson, 192 Wis.
 
 *414
 
 585, 213 N. W. 335 ), the machine clearly is a gambling device; and that its “hidden” number features in connection with the meter and numerous devices for making adjustments and settings thereof are greatly to the advantage of the owner and detrimental to players and leave no doubt that the machine is, as a matter of law, a “device” and “contrivance” which was “devised,” “designed” and is “adapted” and “suitable” and “can be used for gambling purposes.”
 

 Those contentions must be sustained. As the above-stated features are all obvious upon an inspection of the machine and the observation of its operation in the light of the undisputed testimony in explanation thereof, there is no room for any doubt whatever that the machine is a “device” and “contrivance” which clearly is “adapted, suitable, devised, designed” and “which can be used for gambling purposes” within the meaning of those terms as used in sec. 348.09, Stats. Consequently the machine constitutes a gambling device as a matter of law, and the court was in error in refusing to charge the jury to that effect, as was requested by the state in the requested instructions numbered 1 tO' 10, inclusive.
 

 Although, in connection with providing in sec. 348.09, Stats., for the punishment of any person who shall knowingly suffer or permit any such gambling device “to be set up, kept, managed or used,” these quoted words are followed in the disjunctive by the phrase
 
 “or
 
 any gambling or betting therewith, thereon or by means thereof,” it does not follow therefrom that in order to establish guilt under sec. 348.09, Stats., the state must prove also that, in addition to such gambling device being so “set up, kept, managed or used,” there .actually was “gambling or betting therewith, thereon or by means thereof.” On the contrary, as by the use of the word “or” at the commencement of that latter phrase it is in the disjunctive in its relation to the phrase preceding, a violation under the statute is established either when it is proven that such a gambling device is set up, kept, managed or used,
 
 or
 
 when it is proven
 
 *415
 
 that there was any gambling or betting with or on or by means of the machine in question. Consequently it was not necessary for the state to prove that a pay-off was made to anyone in connection with the play of the pinball machine, or that it was actually used for gambling. Therefore the court was likewise in error in failing to give to the jury the requested instructions numbered 11 to 16, inclusive; and in instructing the jury that the only question for them to^ determine was whether the defendant unlawfully and knowingly suffered and permitted the machine for gambling in the building.
 
 People v.
 
 Kay, 38 Cal. App. (2d) (Supp.) 759, 102 Pac. (2d) 1110, 1112.
 

 Error is also assigned by the state in relation to the court’s ruling in sustaining defendant’s objections to the admission in evidence of a photostatic copy of the slip of paper on which there was a column of ten numerals written in-pencil, and which was testified to have been found under forty-four nickels in a cashbox inside the locked portion of the pinball machine, when it was unlocked upon inspection by the state pursuant to leave granted by the court. The court sustained defendant’s objections on the ground that the slip of paper was not sufficiently identified, — that no foundation was shown, as to who made it and when it was made. The state also contends a license, which was issued under a city ordinance and which was fastened to the top of the machine that was received in evidence was irrelevant in the prosecution for violation of a state statute. The record in those respects does not warrant the conclusion that any prejudicial error was committed in those respects.
 

 By th’e Court.
 
 — Case remanded'to the trial court, with a certified copy of the foregoing opinion, for further proceedings according to law. No costs will be taxed.