CITY OF MILWAUKEE, Respondent, v. MILWAUKEE AMUSE-
MENT, INC., Appellant.

*November 25, 1963—January 7, 1964.*

242

244

For the appellant there was a brief and oral argument by *Michael D. Preston* of Milwaukee.

For the respondent there was a brief by *John J. Fleming,* city attorney, and *Maurice L. Markey, Harvey G. Odenbrett,* and *Patrick J. Madden,* assistant city attorneys, and oral argument by *Mr. Markey* and *Mr. Madden.*

CURRIE, C. J. These issues are presented by this appeal:

(1) Is the pinball machine herein involved a gambling device within the provisions of the ordinance?

(2) Is the ordinance invalid as going beyond the delegable power authorized by sec. 66.051, Stats.?

(3) Is the ordinance so broad in scope that it constitutes an unreasonable exercise of the police power in violation of the due-process clause of the Fourteenth amendment to the United States constitution and sec. 1, art. I, Wisconsin constitution?

(4) Is the city estopped from bringing this action because of having licensed the instant pinball machine?

(5) Did the trial court commit prejudicial error in its rulings on evidence?

(6) Should a mistrial have been granted because of an incident which occurred during the course of trial?

(7) Were the costs improperly taxed?

*Instant Pinball Machine as a Gambling Device Within Provisions of Ordinance.*

The pertinent provision of the applicable ordinance, viz., sec. 107–5 of the Milwaukee Code of Ordinances, provides as follows:

"No person shall possess, keep, own, operate, use or cause to be kept, operated or used . . . any . . . pin games, . . . or other device of any kind or nature whatsoever, upon, in, by or through which money is or may be staked or hazarded, . . . or upon the result of the action of such . . . money, chips, checks, credit prizes, merchandise, or other valuable thing is or may be staked . . . won or lost; and such devices are prohibited in the city of Milwaukee and declared to be gambling devices."

Whether the instant pinball machine constitutes a prohibited gambling device within the meaning of the ordinance is dependent on whether transfer to the succeeding game of the additional score, which has been won by chance on the preceding game, is a "valuable thing."

This court in the recent case of *State v. Lake Geneva Lanes, Inc.,* ante, p. 151, 125 N. W. (2d) 622, held that the award of a free game or replay as a result of a score obtained largely by chance on a pinball machine is something of value as a matter of law. This holding is in accord with *State v. Jaskie* (1944), 245 Wis. 398, 14 N. W. (2d) 148. As pointed out in the *Lake Geneva Lanes Case* the courts of the country are divided on this issue. See also Comments, Gambling Today Via the "Free Replay" Pinball Machine, by Robert J. Urban, 42 Marquette Law Review (1958), 98.

The rationale in support of holding that a free replay is a thing of value within the meaning of antigambling ordinances and statutes is well stated in *Kraus v. Cleveland* (1939), 135 Ohio St. 43, 46, 47, 19 N. E. (2d) 159, as follows:

> "*Amusement is a thing of value.* Were it not so, it would not be commercialized. The less amusement one receives, the less value he receives, and the more amusement, the more value he receives. Whoever plays the device and obtains tokens therefrom receives more value for his nickel, with respect to the amount of amusement obtained, than the player who receives none at all. . . .
>
> "The minimum amount of amusement offered in each play is that which is offered without any return of tokens. Whatever amusement is offered through the return of tokens is added amusement which a player has an uncertain chance of receiving. This added amount of amusement, the procurement of which is dependent wholly upon chance, is a thing of value . . .
>
> "Since amusement has value, and added amusement has additional value, and since it is subject to be procured by chance without the payment of additional consideration therefor, there is involved in the game three elements of gambling, namely, chance, price and a prize." (Emphasis supplied.)

The foregoing was quoted with approval in the more-recent case of *Westerhaus Co. v. Cincinnati* (1956), 165 Ohio St. 327, 336, 135 N. E. (2d) 318. Other cases which hold that amusement provided by devices such as pinball machines is a thing of value, under an ordinance or statute worded similarly to the instant ordinance, are *Worl v. State* (Ind. 1962), 183 N. E. (2d) 594, 597, and *People v. Gravenhorst* (1942), 32 N. Y. Supp. (2d) 760, 775. For other cases holding that free replays on pinball machines make them gambling devices, see *Territory v. Uyehara* (1957), 42 Hawaii 184; *Holliday v. Governor of State of South Carolina* (D. C. S. C. 1948), 78 Fed. Supp. 918; and *Alexander v. Martin* (1939), 192 S. C. 176, 6 S. E. (2d) 20.

Under the reasoning of the cited cases we are satisfied that it would be immaterial if, instead of taking the form of a replay given free for a high score obtained by chance, the award were to consist of giving extra balls or plays to be realized on inserting a further coin. For example, the instant machine provides the player with five balls for each dime inserted. If as a result of achieving a certain high score by chance the player were to receive two extra balls, or seven balls in all, by inserting another dime, it clearly would be a gambling device under an ordinance such as the one before us on this appeal. This is because the player receives more amusement for seven balls than he does for five, and amusement is a thing of value within the provisions of the ordinance. However, the instant machine, instead of providing extra balls free upon insertion of a further dime because of the high score received in playing the preceding game, provides a carry-over score which may be utilized by the player upon inserting another dime. Because the goal sought by the player in playing the machine is a high score, he receives more amusement for his second dime than would be the case if there was no score carried over from the prior game. In other words the transferable score achieves the identical purpose as would providing extra free balls for the second dime.

In *Milwaukee v. Johnson* (1927), 192 Wis. 585, 213 N. W. 335, the alleged gambling device consisted of a machine with a slot into which the player inserted a five-cent piece. When the player pulled a lever a series of revolving disks was set in motion. When these disks ceased to revolve the machine indicated through an opening the number of checks worth five cents in trade which the player would receive if he played the machine again. At the end of each play the player by pulling another lever secured a package

of mints. If the player failed to pull this second lever after placing the nickel in the slot, he forfeited his right to secure the mints upon that play. The checks secured by playing the machine could also be used to play the machine in place of nickels, but the machine was so constructed that the player secured no mints when he played the machine with these checks in place of the five-cent piece. The court in its opinion stated (p. 593) :

"It is this chance of receiving something for nothing which appeals to the cupidity of human nature and to the gambling instinct possessed by human beings. The machine is so designed as to induce the player to deposit his coin for the purpose of ascertaining what he will receive in return for coins thereafter deposited. It is this element of chance involved in the second operation of the machine that is the soul of the transaction which attracts the player and makes the machine a gambling device."

We deem this same reasoning is applicable to the instant machine. The player, who receives sufficient score to be entitled to a transfer of score to a second game, is induced to spend a further dime in order to realize the benefit of the carry-over score. Not only does this render the machine a gambling device within the meaning of the ordinance because the player deems this carry-over score to be a thing of value to him, but it emphasizes one of the evils sought to be combated by such an ordinance. This evil is the inducing of feeding more money into the machine than would be the case if there were no carry-over score or other thing of value awarded. The more money which the player spends playing such device the less he will have to devote to the needs and welfare of himself or family.

The majority of the court conclude that the instant pinball machine is a gambling device which is prohibited by the ordinance.

### Does Statute Exceed Delegated Power?

Defendant contends that the instant ordinance exceeds in scope the power delegated by the legislature under sec. 66.051, Stats., to regulate gambling and gambling devices.[1] The asserted basis for this contention is that this statute is only applicable to gambling devices *per se*, and the instant pinball machine is not such device. This argument overlooks sub. (4) of the statute, which provides that nothing in the statute "shall be construed to preclude cities and villages from prohibiting conduct which is the same or similar to that prohibited by chs. 941 to 947."

Sec. 945.05, Stats., prohibits the dealing in gambling devices or machines and sec. 945.01 (3) defines a gambling machine as follows:

"A gambling machine is a contrivance which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance, even though accompanied by some skill and whether or not the prize is automatically paid by the machine."

For reasons previously stated herein the instant pinball machine does afford the player an opportunity to obtain something of value, the award of which is determined by chance. Therefore, the contention that Milwaukee in enact-

---

[1] Sec. 66.051 provides: "The board or council of any town, village or city may:

"(1) Prohibit all forms of gambling and fraudulent devices and practices;

"(2) Cause the seizure of anything devised solely for gambling or found in actual use for gambling and cause the destruction of any such thing after a judicial determination that it was used solely for gambling or found in actual use for gambling;

"(3) Prohibit conduct which is the same as or similar to that prohibited by s. 947.01 or 947.03.

"(4) Nothing in this section shall be construed to preclude cities and villages from prohibiting conduct which is the same or similar to that prohibited by chs. 941 to 947."

ing the ordinance exceeded the power delegated to it by sec. 66.051, Stats., is without merit.[2]

### Constitutionality of Ordinance.

Defendant further contends that the ordinance offends the due-process clause of the Fourteenth amendment to the United States constitution and sec. 1, art. I, Wisconsin constitution, because by its terms the ordinance is broad enough to prohibit the ownership of devices not primarily designed for gambling purposes. Thus it is asserted that the ordinance is an unreasonable exercise of the police power and violates substantive due process. The portion of the ordinance which forms the basis of this attack by defendant is that which includes in the prohibited devices any such "of any kind or nature whatsoever, upon, in, by or through which money is or may be staked or hazarded."

It is fundamental that no one but a person injured can question the constitutionality of a law. *Schutt v. Kenosha* (1950), 258 Wis. 83, 86, 44 N. W. (2d) 902; *Goodland v. Zimmerman* (1943), 243 Wis. 459, 466, 10 N. W. (2d) 180; *Appeal of Van Dyke* (1935), 217 Wis. 528, 546, 547, 259 N. W. 700; 16 C. J. S., Constitutional Law, p. 226, sec. 76. Defendant was not prosecuted for owning a device not primarily designed for gambling purposes, but one which was.

Even if defendant were in a position to raise this issue of constitutionality, it could not prevail. One of the accepted canons of statutory construction is that a statute should be construed so as to avoid constitutional objections to its validity. *Swanke v. Oneida County* (1953), 265 Wis. 92, 60 N. W. (2d) 756, 62 N. W. (2d) 7; *David Jeffrey Co. v. Milwaukee* (1954), 267 Wis. 559, 66 N. W. (2d) 362.

---

[2] Even if the ordinance were more restrictive than the enabling statute it would not in itself invalidate the statute. *Dallmann v. Kluchesky* (1938), 229 Wis. 169, 176, 282 N. W. 9.

This is particularly true where the literal construction of a statute would lead to an absurd, unreasonable, or unjust result. *State v. Retail Gasoline Dealers Asso.* (1950), 256 Wis. 537, 41 N. W. (2d) 637. The same principles apply to ordinances. *Highway 100 Auto Wreckers v. West Allis* (1959), 6 Wis. (2d) 637, 96 N. W. (2d) 85, 97 N. W. (2d) 423.

The constitutional objection raised by defendant centers on the phrase "may be staked." Defendant emphasizes the phrase "may be," indicating the element of possibility, while the city emphasizes the auxiliary nature of the same phrase, indicating that the entire phrase means "adaptable" or "designed for" gambling purposes. In keeping with the rule that laws are to be interpreted to avoid unconstitutionality and absurd results, we adopt the construction that only devices of a character which are more adaptable to gambling purposes than innocent use are proscribed by the ordinance. Cf. *Hamilton Watch Co. v. Benrus Watch Co.* (D. C. Conn. 1953), 114 Fed. Supp. 307, 315, in which the phrase "may be" found in a section of the Clayton Act was construed as referring to reasonable probability.

### *Estoppel.*

Defendant contends plaintiff city is estopped to prosecute this forfeiture action because of having previously licensed the instant pinball machine as an amusement device and having collected from defendant a license fee therefor. The gist of defendant's argument is contained in this paragraph in its brief:

"It would appear to be unjust and inequitable and a violation of all principles of justice and decency to permit the City of Milwaukee to collect a license fee authorizing the ownership of the machine and permitting the leasing and using of such a machine and then to summarily charge the

same person that he has violated the ordinance by owning such a device."

The city counters with the argument that in defendant's application for license it listed 126 devices which it desired to have licensed as "amusement devices only," and that the city did not know, and had no means of knowing, that this pinball machine was a gambling device. However, defendant attempted to prove that the police had inspected the pinball machine and knew its nature, but this evidence was excluded by the trial court. Under our view of the applicable law all of these facts are beside the point. This is because a city cannot bargain away its police power. 6 McQuillin, Mun. Corp. (3d ed.), p. 530, sec. 24.41.

Ordinances, such as the instant one, proscribing gambling devices are enacted pursuant to the city's police power. *Dallmann v. Kluchesky* (1938), 229 Wis. 169, 173, 282 N. W. 9. Estoppel will not lie against a municipality so as to bar it from enforcing an ordinance enacted pursuant to the police power. Concurring opinion, *Schober v. Milwaukee* (1963), 18 Wis. (2d) 591, 596, 119 N. W. (2d) 316, and annotation, Applicability of doctrine of estoppel against government and its governmental agencies, 1 A. L. R. (2d) 338, 340. See also *Park Bldg. Corp. v. Industrial Comm.* (1960), 9 Wis. (2d) 78, 88, 100 N. W. (2d) 571, and *State v. Chippewa Cable Co.* (1963), 21 Wis. (2d) 598, 608, 124 N. W. (2d) 616.

*Rulings on Evidence.*

Defendant attacks certain of the trial court's rulings on evidence.

Under one attacked ruling the trial court permitted testimony to be received regarding the $3 payoff by the bartender of Holiday Bowl to one of the police officers. This was error because there was no proof offered that this pay-

off was done pursuant to prearrangement with defendant, or that defendant had any part in such payoff. However, this ruling was not prejudicial because this is a civil action and the evidence establishes as a matter of law that the pinball machine is a gambling device within the meaning of the ordinance.

Further attacked rulings had to do with excluding evidence bearing on the issue of estoppel by the city in licensing the machine. For reasons hereinbefore set forth, the city was not estopped from bringing this action because of having licensed the machine. Furthermore, the issue of estoppel was one for the court and not the jury.

By another ruling the trial court refused to permit Puzie, a defense witness, to testify to transactions had by him with an assistant city attorney. An offer of proof was made of correspondence from this assistant city attorney to Puzie which it is alleged stated that a pinball machine identical in construction to the instant machine was stated to be a "legal machine" which could be ordered and used. The trial court properly excluded this evidence because it was wholly irrelevant. It did not even go to the issue of estoppel because there was no showing made that anyone connected with defendant ever saw this correspondence.

### Mistrial.

Defendant contends it was error for the trial court not to have declared a mistrial because of questions put to one of the police-officer witnesses which "accused the president of the defendant corporation with tampering with the pinball machine." The material portion of the record bearing on this contention consists of certain questions put by the assistant city attorney to Officer Kaczkowski, and the latter's answer there. We quote such portion of the record as follows:

"*Q.* Officer Kaczkowski, do you have reasonable grounds to believe that this machine was tampered with by Clarence Smith on the 26th day of this month, this year, while it was in the property room of the Milwaukee Police Department? *A.* I do.

"*Q.* And when did you receive that information? *A.* Yesterday afternoon.

"*Q.* And from whom did you receive that information? *A.* Assistant District Attorney Surges.

"*Q.* Did he tell you that Clarence Smith had opened up the back of this machine in his present [sic]? *A.* Yes."

As appears from the above-quoted portion of the transcript, no objection was interposed to any of these questions or answers, and no motion for mistrial was then made. Furthermore, defendant did not move for a new trial on this ground. We, therefore, conclude that defendant waived any right to now predicate error upon this line of questioning, or the failure of the trial court to declare a mistrial. *Steffes v. Farmers Mut. Automobile Ins. Co.* (1959), 7 Wis. (2d) 321, 333, 96 N. W. (2d) 501.

### Taxation of Costs.

The judgment entered against defendant was in the total sum of $768 and consisted of a fine of $200 plus costs of $568. Included in the $568 of costs was an item of $450 for jurors' fees of $150 per day for three days. This judgment was entered by the clerk without any notice having been given defendant of the taxation of costs.

Defendant contends it was entitled to the three-day notice of taxation of costs provided by sec. 271.10 (1), Stats. This contention is based on ch. 299, Stats., which governs certain trials in county court proceedings, sec. 299.21 (4) of which, provides in part as follows:

"After such placement or transfer for trial by a 12-man jury, the parties shall proceed as if the action had originally been begun as a proceeding under Title XXV; . . ."

On the face of sec. 299.21 (4), Stats., it would appear that costs in county court jury trials are governed by circuit court procedure, including sec. 271.10 (1), which requires three days' notice before costs can be taxed. Such, however, is not the case. Sec. 299.01 (2) specifically provides that actions to recover forfeitures are to be governed by the procedure set forth in ch. 299, Stats., sec. 299.25 of which provides that: "The clerk shall without notice to the parties tax and insert in the judgment as costs in favor of the party recovering judgment . . ." Clearly, therefore, costs in actions to collect forfeitures are taxable without notice to the parties.

While defendant has not questioned the statutory authority of the clerk to tax jurors' fees as costs in this forfeiture action, this court deems that the interest of justice requires that we pass on this question. The clerk apparently included jurors' fees pursuant to section 10 of the Milwaukee County District Court Act (ch. 218, sec. 10, Laws of 1899). This Act was abolished by the Court Reorganization Act (ch. 315, sec. 27, Laws of 1959). We are unable to find any existing statute which would permit the taxation as costs in this action of the juror fees of a 12-man jury. Therefore, the judgment will be modified by eliminating this $450 item from the costs.

*By the Court.*—The judgment is modified by eliminating from the costs taxed against defendant the sum of $450 for juror fees thus reducing the principal amount of the judgment to $318 and, as so modified, the judgment is affirmed. The order appealed from is affirmed. Neither party shall tax costs on this appeal.

BEILFUSS, J., took no part.

FAIRCHILD and GORDON, JJ. (*dissenting*). We respectfully dissent. We are unable to agree with the opinion inso-

far as it determines that an increased score awarded to the player and the privilege of carrying it forward into a second game is a "valuable thing" under the ordinance. It is arguable that the machine in question falls within that portion of the ordinance which proscribes devices in which money "may be staked." However, the opinion of the majority does not rely thereon; instead, the decision rests upon the conclusion that the machine is one which rewards the player with something valuable.

While the player may get more pleasure from a higher score, such euphoria is not a thing of value, in our opinion. The hope of a high score may serve to induce a player to spend more money in playing the machine, but such temptation does not justify a conclusion that the machine dispenses an item of value.

The player may get more joy from participating in a game in which, through chance, he may receive a high score, but the amusement of so participating is not to be construed as a valuable prize. This would occur if he received a tangible gift or even extra balls or free plays. See *State v. Lake Geneva Lanes, Inc.,* ante, p. 151, 125 N. W. (2d) 622.