CITY OF MILWAUKEE, Respondent, v. LEAVITT, d/b/a A-SPRAY PAINTERS & REFINISHERS, and another, Appellants.

*April 14—May 10, 1966.*

For the appellants there was a brief by *Anderson, Bylsma & Eisenberg* of Madison, and oral argument by *Clarence G. Bylsma.*

For the respondent there was a brief by *John J. Fleming,* city attorney, and *Maurice L. Markey,* assistant city attorney, and oral argument by *Mr. Markey.*

CURRIE, C. J. We start with the premise that the nonresidential uses of the building made between the adoption of the Milwaukee Zoning Ordinance in 1921 and the year 1941 constituted legal nonconforming uses, but that the commercial and industrial uses made subsequent to January 7, 1947 (the date Perssion acquired title) were illegal nonconforming uses. This is because sec. 62.23 (7) (h), Stats., provides:

*"Nonconforming uses.* The lawful use of a building or premises existing at the time of the adoption or amendment of a zoning ordinance may be continued although such use does not conform with the provisions of the ordinance. . . . If such nonconforming use is discontinued for a period of 12 months, any future use of the building and premises shall conform to the ordinance." [1]

---

[1] This statute was adopted by the city of Milwaukee on October 15, 1923. See *State ex rel. Cities Service Oil Co. v. Board of*

The sole issue raised by defendants on this appeal is whether plaintiff city is estopped from revoking defendant Leavitt's occupancy permit and prosecuting this action. Defendants contend that the city is so estopped on these two grounds: (1) Since 1947 occupancy permits have been continuously granted to tenants for uses violative of the zoning ordinance; and (2) appellant Leavitt expended a considerable sum of money to ready the building for his vending-machine repair and refinishing business in reliance on the validity of the occupancy permit.

This court has often said that zoning ordinances, such as the one sought to be enforced in the instant case, are enacted pursuant to the police power of municipalities.[2]

While municipal and other government units are not wholly immune from application of the doctrine of equitable estoppel,[3] this court is firmly committed to the principle that estoppel "will not lie against a municipality so as to bar it from enforcing an ordinance enacted pursuant to the police power." [4] Thus erroneous acts of

_Appeals_ (1963), 21 Wis. (2d) 516, 526, 527, 124 N. W. (2d) 809. See also secs. 12–3, 15–5, 15–6, Milwaukee Code of Ordinances.

[2] _State ex rel. American Oil Co. v. Bessent_ (1965), 27 Wis. (2d). 537, 540, 135 N. W. (2d) 317; _State ex rel. Saveland Park Holding Corp. v. Wieland_ (1955), 269 Wis. 262, 69 N. W. (2d) 217; _State ex rel. Carter v. Harper_ (1923), 182 Wis. 148, 154, 155, 196 N. W. 451.

[3] _City of Milwaukee v. Milwaukee County_ (1965), 27 Wis. (2d) 53, 66, 133 N. W. (2d) 393; _Milwaukee County v. Badger Chair & Furniture Co._ (1936), 223 Wis. 118, 128, 269 N. W. 659; _Lang v. Cumberland_ (1962), 18 Wis. (2d) 157, 163, 118 N. W. (2d) 114; Anno. Applicability of doctrine of estoppel against government and its governmental agencies, 1 A. L. R. (2d) 338, 340, 349–359; 31 C. J. S., Estoppel, p. 696, sec. 141; 19 Am. Jur., Estoppel, pp. 820, 821, sec. 168. See _Park Bldg. Corp. v. Industrial Comm._ (1960), 9 Wis. (2d) 78, 87, 100 N. W. (2d) 571, for a general discussion of the application of the doctrine of estoppel against government units.

[4] _Milwaukee v. Milwaukee Amusement, Inc._ (1964), 22 Wis. (2d) 240, 253, 125 N. W. (2d) 625; see also concurring opinion in _Schober v. Milwaukee_ (1963), 18 Wis. (2d) 591, 597, 598, 119

municipal officers do not afford a basis to estop the municipality from enforcing its ordinances enacted pursuant to the police power. In Anno. 1 A. L. R. (2d) 338, the rule is well stated:

"Ordinarily a municipality is not estopped by a mistake, unauthorized act, laches, dereliction, or wrongful conduct on the part of a public official, and no estoppel can grow out of dealings with municipal public officers of limited authority where such authority has been exceeded." [5]

Defendants stress the fact that Leavitt made substantial expenditures in repair and installations in the building in order to utilize it for the purposes of his business. In *State ex rel. Cities Service Oil Co. v. Board of Appeals* [6] and *Wauwatosa v. Strudell* [7] this court specifically considered situations in which a building inspector had erroneously issued a permit, and as a defense to a later action by the city to revoke that permit the aggrieved party raised the defense that because of expenditures in reliance on the building permit they had a "vested right" to the property. In the *Cities Service Oil Co. Case* the relators claimed expenditures of $3,200 and installation of two 10,000-gallon gasoline storage tanks in reliance on an erroneous building permit. In spite of these expenditures this court affirmed revocation of the permit, stating:

---

N. W. (2d) 316; 31 C. J. S., Estoppel, pp. 700, 701, sec. 141; and Anno. 1 A. L. R. (2d) 338, 349, 350. For cases generally recognizing that the doctrine of estoppel will not be applied against a governmental unit so as to curtail the exercise of its police power, see *McKenna v. State Highway Comm.* (1965), 28 Wis. (2d) 179, 186, 135 N. W. (2d) 827; *State v. Chippewa Cable Co.* (1963), 21 Wis. (2d) 598, 608, 124 N. W. (2d) 616; *Park Bldg. Corp. v. Industrial Comm.*, *supra*, footnote 3 at pages 87, 88.

[5] *Supra*, footnote 3, at page 351; also see 31 C. J. S., Estoppel, p. 703, sec. 142, 19 Am. Jur., Estoppel, pp. 820, 821, sec. 168.

[6] *Supra*, footnote 1.

[7] (1959), 6 Wis. (2d) 450, 95 N. W. (2d) 257.

". . . the building inspector issued the permit in violation of the zoning ordinance because of his unreasonable and erroneous interpretation of its meaning. Sec. 13–5 of the Milwaukee zoning ordinance provides: 'The issuance of a [building] permit . . . shall not be deemed or construed to be a permit for, or an approval of, any violation of any of the regulations of this code.' A similar provision of the Milwaukee county zoning ordinance was before this court in *Wauwatosa v. Strudell* (1959), 6 Wis. (2d) 450, 455, 95 N. W. (2d) 257. It was there claimed that an expenditure of $60,000 had been made in reliance on the permit. We held that the issuance of a permit did not authorize a use which violated the zoning ordinance. This holding controls the issue raised by appellants that the expenditure of funds by them precluded the Board of Appeals from revoking the building permit." [8]

Zoning ordinances are enacted for the benefit and welfare of the citizens of a municipality. Issuance of an occupancy or building permit which violates such an ordinance not only is illegal *per se,* but is injurious to the interests of property owners and residents of the neighborhood adversely affected by the violation. Thus when the city acts to revoke such an illegal permit it is exercising its police power to enforce the zoning ordinance for the protection of all citizens who are being injured by the violation, and not to protect some proprietary interest of the city. These citizens have a right to rely upon city officials not having acted in violation of the ordinance, and, when such officials do so act, their acts should not afford a basis for estopping the city from later enforcing

[8] *Supra,* footnote 1, at page 530. Sec. 13–5 is still a part of the Milwaukee Code of Ordinances. For cases in accord that estoppel cannot be invoked on the basis of an illegally issued permit see Anno. Rights of Permittee under illegally issued building permit, 6 A. L. R. (2d) 960, 965; Anno. Right of municipality or other public authority to enforce zoning or fire limit regulations as affected by its previous conduct in permitting or encouraging violation thereof, 119 A. L. R. 1509, 1512; and 9 McQuillin, Mun. Corp. (3d ed. rev.), pp. 559, 560, sec. 26.214.

the ordinance. This is true regardless of whether or not the holder of the illegal permit has incurred expenditures in reliance thereon.

*By the Court.*—Judgment affirmed.