Village of Hobart, Plaintiff-Appellant,

v.

Brown County and Brown County Solid Waste
Management Board, Defendants-Respondents.†

Court of Appeals

*No. 03–1907. Submitted on Briefs January 13, 2004.—Decided
February 24, 2004.*

2004 WI App 66

(Also reported in 678 N.W.2d 402.)

† Petition to review pending.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Richard C. Yde* of *Stafford, Rosenbaum, LLP* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *William F. White* and *Mary C. Turke* of *Michael, Best, & Friedrich, LLP* of Madison.

On behalf of Outagamie and Winnebago Counties, the cause was submitted on the amicus brief of *Joseph P. Guidote, Jr.*, corporation counsel of Outagamie County.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. The Village of Hobart appeals a summary judgment granted in favor of Brown County and the Brown County Solid Waste Management Board. The trial court concluded the Village was equitably estopped from enforcing its zoning laws because the County reasonably relied on the Village's erroneous representations that a waste transfer station could lawfully be constructed on a particular site. The Village argues the summary judgment should be reversed because: (1) a municipality cannot be estopped from enforcing its zoning ordinance; (2) the County did not reasonably rely on any action or inaction of the Village when it constructed the station; (3) Wis. Stat. § 13.48(13)(a)[1] does not provide the County with an alternative basis to justify the transfer station's construction; and (4) the County did not obtain vested rights.[2]

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] The Village also argues the trial court erred when it denied the injunction by concluding the Village was required to show irreparable injury. As the Village correctly observes, a municipality does not have to show irreparable injury where it is authorized to seek a statutory injunction to enjoin a zoning ordinance violation. *See Forest County v. Goode*, 219 Wis. 2d 654, 682–83, 579 N.W.2d 715 (1998). The Village's authority to enforce municipal zoning ordinance is conferred by Wis. Stat. §§ 61.35 and 62.23(8).

¶ 2. We conclude that when considering whether to issue an injunction for a zoning violation, a circuit court can apply equitable estoppel to bar a municipality from enforcing a zoning ordinance. Nevertheless, we hold that equitable estoppel was not proven here. We further conclude that the transfer station's construction and operation cannot be justified by either WIS. STAT. § 13.48(13)(a) or on a vested rights theory. However, we remand this matter to the circuit court for further proceedings so that the circuit court can determine whether this is one of those rare cases where other equitable considerations justify denying the Village's request for an injunction. Therefore, we reverse the judgment and remand for further proceedings.

## BACKGROUND

¶ 3. The County currently has contracts with the Oneida Tribe of Indians of Wisconsin and thirteen municipalities in Brown County, which includes the Village, to receive and dispose of their solid waste. The County disposed of most of the solid waste at the Brown County East Landfill, which reached capacity in May 2003. Pursuant to a "Tri-County Solid Waste Agreement," the County then disposed the solid waste at the Outagamie and Winnebago County landfills. Because of concerns that these landfills would not be able to manage the increased truck traffic due to the tribe and municipalities directly hauling their solid waste to the landfills, the County decided to construct a new solid waste transfer station to consolidate the waste before it was transported to the landfills.

¶ 4. The County owns property in the Village known as the West Landfill. The County used the property as an active landfill until July 16, 1998, but the property had apparently been used as a park since sometime in 1996. On February 18, 2002, Village board representatives met with the County to discuss siting the transfer station on the West Landfill property. At this meeting, the Village told the County that the West Landfill's use and zoning would comport with the transfer station's use. A few days later, on February 25, the Village and County met for a second time to discuss siting the transfer station. The County proposed arrangements that allowed it to own the transfer station and pay the Village an annual franchise fee of $14,000.

¶ 5. On March 5, the Village held a public board meeting and formally accepted the County's franchise-fee siting proposal. Prior to accepting the proposal, the Village president stated the County did not require Village approval to construct the transfer station because the site was properly zoned and the transfer station would be a permitted use. Relying on the Village's representations, the County employed an engineering firm to obtain the necessary DNR approvals for the transfer station's construction and to ensure the building plans complied with all safety codes. The DNR eventually gave the necessary approvals, and the engineering firm evidently approved the building plans.

¶ 6. On May 6, the Village and County entered into a memorandum of understanding. Among other things, the memo provided, "Brown County agrees to design, permit and build transfer station at West Landfill." This memo concluded by stating it was the Village's intention to approve the transfer station's construction at the West Landfill and to negotiate a thirty-year contract for its operation.

¶ 7. On May 17, the Village supplied the County with a zoning map that showed the West Landfill zoned as "public use." However, the Village's zoning ordinances did not contain a public use classification, but the County, aware of this fact, claimed that it was not concerned because it frequently encountered inconsistencies between zoning maps and zoning codes. In reality, the West Landfill was zoned as "A-2 exclusive agricultural district," and the transfer station is not a permitted use under this zoning classification.[3]

---

[3] VILLAGE OF HOBART, WIS., ORDINANCE § 6.010 sets forth the permissible uses for an A-2 exclusive agricultural district. It states:

> Lawful uses which are pursuant to the preservation of prime agricultural land for continual farming and which are performed in a manner consistent with the requirements of this Ordinance, shall be permitted in all A-2 Districts.

> The following shall apply in A-2 Districts:

> **A. PERMITTED USES**

> 1. Agriculture, dairying, floriculture, forestry, general farming, grazing, non-retail greenhouses, hatcheries, horticulture, livestock raising, nurseries, orchards, paddocks, pasturage, poultry raising, truck farming, game farms, fish farms, wildlife sanctuaries and game preserves.

> 2. Commercial feedlots and stock farms.

> 3. Farm ponds.

> 4. Single family dwellings to be occupied by a person who, or a family at least one (1) member of which earns a substantial part of his or her livelihood from farm operations on the parcel, or is a parent or child of the operator of the farm.

> . . . .

## C. CONDITIONAL USES

1. Agricultural warehouses which do not conflict with agricultural uses and/or are found necessary in light of alternative locations available for such uses, or which are incidental to the farm operation.

2. Airfields, airports, and heliports, provided that they are public uses.

3. Artificial lakes.

4. Bed and breakfast establishments.

5. Cemeteries.

6. Colleges, universities.

7. Commercial raising of animals, such as foxes, goats, hogs, mink, and rabbits.

8. Parks, recreation sites, and golf courses if they are public (governmental) facilities.

9. Quarries, sand and gravel pits, if public facilities or incidental to the farm operation.

10. Railroad right-of-way and passenger depots, not including switching, storage, freight yards, or sidings which do not conflict with agricultural use and/or are found necessary in light of alternative locations available for such uses.

11. Religious institutions in the form of convents, seminaries, monasteries, churches, chapels, temples, synagogues, rectories, parsonages, and parish houses.

12. Riding academies and stables which do not conflict with agricultural use and/or are found necessary in light of alternative locations available for such uses.

13. Stockyards and fur farms.

14. Two family dwellings to be occupied by a person who, or a family at least one (1) member of which, earns a substantial part of his or her livelihood from farm operations on the parcel, or is a parent or child of the operator of the farm.

at the West Landfill. This letter explained that the transfer station's use conformed to the West Landfill's zoning classification. Just over a week later, on August 21, the Village's Site Review Committee unanimously approved the County's application for the transfer station's construction. The County needed the application approved by the committee in order to later obtain a building permit from the Village.

¶ 9. After receiving approval from the site committee, the County solicited bids for the transfer station's construction, and, on September 16, the County awarded the contract to Geo. M. Hougard & Sons, Inc. The contract provided construction was to commence no later than October 14.

¶ 10. The County needed a sewer permit number to enter on its building permit application. However, on September 24, the Village Board rescinded the memorandum of understanding in response to letters from concerned residents and notified the County of its action on October 1. The Village clerk then refused to issue the County the sewer permit number and informed the County she had been instructed not to issue the County any permits regarding the transfer station. By that date, the County had incurred approximately $130,000 in engineering fees, but construction of the transfer station had not yet begun.

¶ 11. The County sought advice from its corporation counsel, who opined that under Wis. Stat. § 13.48(13)(a), the County could proceed with the construction without a building permit.[4] Thus, despite the

---

[4] Wisconsin Stat. § 13.48(13)(a) states:

Except as provided in par. (b) or (c), every building, structure or facility that is constructed for the benefit of or use of the state, any state agency, board, commission or department, . . . shall be in

Village's change of position, the County commenced constructing the transfer station on October 9.

¶ 12. On October 24, the Village filed suit against the County seeking a permanent injunction to prohibit the County from constructing and operating the transfer station. The grounds alleged to support the injunction included: (1) the transfer station's use was not a permitted use under the West Landfill's A-2 exclusive agricultural district zoning classification, and (2) the County had not obtained the necessary building permits from the Village. The County continued construction of the transfer station during the lawsuit's pendency.

¶ 13. On April 23, the circuit court granted summary judgment in favor of the County. The court concluded, in part, that (1) the Village was equitably estopped from enforcing its zoning ordinance, and, (2) pursuant to Wis. Stat. § 13.48(13)(a), the County, as an "arm of the state," did not have to obtain the otherwise necessary building permits. This appeal follows that decision. In the meantime, the transfer station's construction was completed at a cost of approximately $1.3 million and has been operating since May 2003.[5]

---

compliance with all applicable state laws, rules, codes and regulations but the construction is not subject to the ordinances or regulations of the municipality in which the construction takes place except zoning, including without limitation because of enumeration ordinances or regulations relating to materials used, permits, supervision of construction or installation, payment of permit fees, or other restrictions.

[5] The construction cost is estimated from the contract the County awarded to the builders.

### DISCUSSION

¶ 14. We review summary judgments de novo, applying the same methodology and standards as the trial court. *See* Wis. Stat. § 802.08; *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If there are no disputed issues of material fact, summary judgment is proper where the moving party is entitled to judgment as a matter of law. *Id.*

### I. Zoning Violations, Injunctions, and Equitable Considerations

¶ 15. The Village claims the trial court erred when it refused to grant an injunction prohibiting the County from constructing and operating the transfer station. It argues the trial court cannot equitably estop it from enforcing its zoning ordinance. The County responds that a court can rely on equitable considerations when determining whether to issue an injunction for an ordinance violation. We agree with the County.

¶ 16. In *Forest County v. Goode*, 219 Wis. 2d 654, 681–82, 579 N.W.2d 715 (1998), the supreme court held a court sitting in equity should weigh traditional equitable considerations, including laches, estoppel, or unclean hands, when deciding whether to issue an injunction for a zoning ordinance violation. The court stated, "Once a violation is established, a circuit court should grant the injunction except, in those rare cases, when it concludes, after examining the totality of the circumstances, there are compelling equitable reasons why the court should deny the request for an injunction." *Id.* at

684. Therefore, equitable estoppel can be a basis upon which the trial court refuses to grant injunctive relief for a zoning violation.[6]

## II. EQUITABLE ESTOPPEL

¶ 17. Alternatively, the Village argues the County did not reasonably rely on any of the Village's actions when it decided to move forward with the actual construction, and the subsequent operation, of the transfer station. The County claims that the trial court correctly found equitable estoppel applies due to the numerous assurances given by the Village that the transfer station's use conformed to the West Landfill's zoning classification. Based upon our review of the undisputed facts, we conclude as a matter of law that the County did not prove all the elements of equitable estoppel. *See Milas v. Labor Ass'n*, 214 Wis. 2d 1, 8, 571 N.W.2d 656 (1997) ("When the facts and reasonable inferences therefrom are not disputed, it is a question of law whether equitable estoppel has been established.").

¶ 18. Equitable estoppel is comprised of the following elements: "(1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment." *Id.* at 11–12. The party asserting the defense must prove these elements by clear and convinc-

---

[6] This principle was recently reaffirmed in *Town of Delafield v. Winkelman*, 2004 WI 17, ¶ 28, 269 Wis. 2d 109, 675 N.W.2d 470.

ing evidence. *Bank of Sun Prairie v. Opstein,* 86 Wis. 2d 669, 680, 273 N.W.2d 279 (1979). The problem here lies with the third element.[7]

¶ 19. We recognize that when the Village rescinded its memorandum of understanding the County was left in a precarious situation. Construction was set to begin in just over two weeks and the County had already invested six months of planning and approximately $130,000 in expenses,[8] yet the transfer station project was in serious jeopardy because the Village would not issue the necessary building permits. We also acknowledge that the County's situation up to that time was a result of its reliance on the Village's actions.[9]

¶ 20. Setting that aside, though, the fact remains that the County, concerned and questioning how to proceed, then consulted with its corporation counsel.

---

[7] We also note that equitable estoppel

> "is not applied as freely against governmental agencies as it is in the case of private persons." Courts have recognized "the force of the proposition that estoppel should be applied against the Government with utmost caution and restraint, for it is not a happy occasion when the Government's hands, performing duties in behalf of the public, are tied by the acts and conduct of particular officials in their relations with particular individuals."

*Milas v. Labor Ass'n,* 214 Wis. 2d 1, 14, 571 N.W.2d 656 (1997) (citations omitted).

Equitable estoppel may be applied against the government "if the government's conduct would work a serious injustice and if the public interest would not be unduly harmed by the application of estoppel." *Id.* The court "must balance the public interests at stake if estoppel is applied against the injustice that might be caused if it is not." *Id.*

[8] Whether these expenses are recoverable is not before us.

[9] We do not conclude, however, whether that reliance was reasonable.

Counsel advised the County that, pursuant to Wis. Stat. § 13.48(13)(a), the Village's turnabout could not stop the County from building the transfer station, even though the County did not have the necessary building permits and the transfer station's use did not comport with the zoning classification. It is undisputed that in reliance upon this advice, the County commenced construction.

¶ 21. As such, when the County began the transfer station's construction after the Village withdrew from the memorandum of understanding, it no longer was relying upon the Village's representations that the West Landfill site's zoning classification allowed for the transfer station's use. Instead, it was relying upon its corporation counsel's advice that it could proceed with construction without the necessary building permits despite the Village's withdrawal from its prior positions.

¶ 22. Consequently, the County has not proved that it reasonably relied upon the Village's preconstruction actions when the County decided to commence construction. Therefore, on this record, equitable estoppel cannot be a ground for denying the Village an injunction for the zoning violation.

### III. Construction of County Buildings under Wis. Stat. § 13.48(13)(a)

██

¶ 23. This conclusion segues into the next issue: does Wis. Stat. § 13.48(13) afford the County a lawful basis for the transfer station's construction without the necessary building permits? Section 13.48(13)(a) states in pertinent part:

> [E]very building, structure or facility that is constructed for the benefit of or use of the state, any state

agency, board, commission or department . . . shall be in compliance with all applicable state laws, rules, codes and regulations *but the construction is not subject to the ordinances or regulations of the municipality in which the construction takes place except zoning,* including without limitation because of enumeration ordinances or regulations relating to materials used, permits, supervision of construction or installation, payment of permit fees, or other restrictions. (Emphasis added.)

The Village argues that by the statute's plain language, it does not apply to the County because it says nothing about county buildings, only state or state agency, board, commission or department buildings. The County responds that the statute does apply to counties because they are "an arm of the state." *See O'Donnell v. Reivitz,* 144 Wis. 2d 717, 725, 424 N.W.2d 733 (Ct. App. 1988).

¶ 24. We assume, but do not decide, that a County, as an arm of the state, falls within the parameters of WIS. STAT. § 13.48(13)(a).[10] The consequence of this assumption is that the County argues it was not required to obtain the necessary local building permits. However, the Village points out the statute still specifically requires the governmental entity to comply with zoning ordinances. The County argues either the Vil-

---

[10] We make this assumption because of the brief argument made by both parties on this point. We note, however, the likelihood of assumption being true is questionable. The attorney general issued an informal opinion on January 8, 1997, concluding that WIS. STAT. § 13.48.13(a) facially does not apply to county buildings and that, historically, county buildings were never exempt from local zoning ordinances under that statute. Additionally, a county is a municipal subdivision, not a state agency, board, commission or department. *See* 1 McQUILLIN MUN. CORP. § 1.24, at 23 (3d ed. 1999).

lage is equitably estopped from enforcing its zoning ordinance or the County complied with the zoning requirements because a municipality's interpretation of its own zoning ordinances is presumed correct. We disagree with the County on both grounds.

¶ 25. Turning to the equitable estoppel argument, a municipality cannot be estopped from seeking to enforce a zoning ordinance violation.[11] *See City of Milwaukee v. Leavitt*, 31 Wis. 2d 72, 78–79, 142 N.W.2d 169 (1966). In *Leavitt*, after recognizing that zoning ordinances are enacted pursuant to a municipality's police power, the supreme court stated, "While municipal and other government units are not wholly immune from application of the doctrine of equitable estoppel, this court is firmly committed to the principle that estoppel 'will not lie against a municipality so as to bar it from enforcing an ordinance enacted pursuant to the police power.' " *Id.* at 76 (citations omitted). Therefore, "erroneous acts of municipal officers do not afford a basis to estop the municipality from enforcing its ordi-

---

[11] This should not be confused with our conclusion above—that a trial court can refuse to issue an injunction for a zoning violation on the grounds of equitable estoppel. *See Forest County*, 219 Wis. 2d at 681–82. As noted in *Town of Delafield v. Winkelman*, 2003 WI App 92, ¶ 1, 264 Wis. 2d 264, 663 N.W.2d 324, in light of *Goode*, the zoning ordinance violator now has " 'two kicks at the cat,' once to defend against the claim that there is a violation and, second, to defend against enforcement of a sanction for that violation." Our conclusion above related only to the second kick. As to the first kick, which is what our discussion here essentially involves, the law is clear that a municipality cannot be estopped from seeking to enforce its zoning ordinance. *See City of Milwaukee v. Leavitt*, 31 Wis. 2d 72, 78–79, 142 N.W.2d 169 (1966).

nances enacted pursuant to the police power." *Id.* at 76–77, and *see id.* at 78–79 ("[C]itizens have a right to rely upon city officials not having acted in violation of the [zoning] ordinance, and, when such officials do so act, their acts should not afford a basis for estopping the city from later enforcing the [zoning] ordinance.").[12]

---

[12] The County argues, however, that the erroneous representations in this case came not only from municipal officers, but from the Village itself. It notes that the Village board and its site committee initially approved the siting of the transfer station at the West Landfill. On this ground, it argues *Leavitt* is not controlling and suggests *Russell Dairy Stores v. Chippewa Falls*, 272 Wis. 138, 74 N.W.2d 759 (1956), is dispositive. We disagree.

In *Russell Dairy Stores*, a City of Chippewa Falls ordinance prevented anyone from constructing driveways that connected to streets by cutting or altering the street's curbs. The plaintiff applied for a permit to construct a driveway that altered a curb, but the plaintiff agreed to provide a concrete apron to replace the curb. The city council granted the permit, and the plaintiff completed the driveway's construction a few days later. Just over six weeks after construction was completed, the council voted to rescind the permit. *Id.* at 142. The supreme court applied equitable estoppel to prevent the rescission because "[s]ubstantial rights to the driveway and its use had become vested in the plaintiff before the city adopted the resolution rescinding the permit." *Id.* at 145–46. The court also enjoined the city from enforcing the ordinance.

It is true that *Russell Dairy Stores* involved the actions of an entire body instead of individual officers. It is also true that the supreme court in a subsequent decision has highlighted this fact. *See Willow Creek Ranch v. Town of Shelby*, 2000 WI 56, ¶ 55, 235 Wis. 2d 409, 611 N.W.2d 693. However, central to and inseparable from the court's holding was the fact that plaintiff obtained vested rights in the property. *Id.* As established below, the County here did not obtain vested rights. *Russell Dairy Stores*, therefore, is not controlling.

¶ 26. Turning to the County's second argument, it claims it complied with the zoning ordinances because under *Kapischke v. County of Walworth,* 226 Wis. 2d 320, 595 N.W.2d 42 (Ct. App. 1999), the Village's interpretation of its own zoning ordinance is presumed correct. The County argues that because the Village board and its site committee unanimously approved the transfer station's siting as a permitted use, the Village is bound by these interpretations, regardless of the fact that the West Landfill is actually zoned as A-2 exclusive agricultural district.[13]

¶ 27. The County seems to correlate a presumption of correctness with categorical correctness. We do not agree with this correlation and conclude the presumption of correctness is overcome. As the Village notes, the transfer station is actually located in an A-2 exclusive agricultural district. VILLAGE OF HOBART, WIS., ORDINANCE § 6.010 outlines the permitted and conditional uses for this zoning classification. *See* note 3. The ordinance only permits agricultural, residential and limited commercial and public uses. *See id.* There is no reasonable construction of the zoning ordinance that would allow for the transfer station's use. *See id.* Quite simply, the Village board and site committee were acting unreasonably and contrary to law by interpreting the ordinance to allow for the siting and operation of the transfer station. Therefore, the presumption of correctness is overcome.

---

[13] The County assumes the actions of the Village board and its site committee constituted an interpretation of the ordinance. We will work under this assumption.

¶ 28. Consequently, WIS. STAT. § 13.48(13)(a) is of no avail to the County. By the plain language of the statute, the County was required to comply with zoning ordinances, which, in light of our conclusions above, it did not do.

## IV. VESTED RIGHTS

¶ 29. The County alternatively argues that it was not required to obtain a building permit because it obtained "vested rights." Citing *State ex rel. Schroedel v. Pagels*, 257 Wis. 376, 43 N.W.2d 349 (1950), the County claims the vested rights accrued because it applied for a building permit and had incurred expenses in preparing and submitting building plans.

¶ 30. However, "in order for a developer's rights to vest, the developer must submit an application for a building permit which conforms to the zoning or building code requirements in effect at the time of the application." *Lake Bluff Hous. Partners v. City of South Milwaukee*, 197 Wis. 2d 157, 177, 540 N.W.2d 189 (1995). "The theory behind the vested rights doctrine is that a builder is proceeding on the basis of a reasonable expectation." *Id.* at 175. Vested rights, therefore, "should only be obtained on the basis of strict and complete compliance with zoning and building code requirements, because a builder's proceeding in violation of applicable requirements is not reasonable." *Id.*

¶ 31. It is undisputed that the County listed the West Landfill's zoning classification as "public use" on its building permit application. This did not conform to the zoning requirements. Again, the fact remains that the West Landfill was zoned as an A-2 exclusive agri-

cultural district. Therefore, while we are sympathetic to the County's significant expenditures of time and resources planning the transfer station's construction, the County simply could not have obtained vested rights. *See id.*

## CONCLUSION

¶ 32. The Village asks that we direct the circuit court to issue an injunction to abate the County's zoning violation. In light of *Goode,* we cannot do this. In *Goode,* 219 Wis. 2d at 684, the supreme court held, "In deciding whether to deny a request for an injunction based upon a . . . zoning ordinance violation, the circuit court should take evidence and weigh any applicable equitable considerations." These considerations should include, but not be limited to: (1) the substantial interests of the property owners and residents of the neighborhood adversely affected by the violation, *see id*; *Leavitt,* 31 Wis. 2d at 78; (2) the extent of the violation, *Goode,* 219 Wis. 2d at 684; (3) the good faith of other parties, *id.*; and (4) any other applicable equitable defenses, *id.,* with the caveat that we have concluded equitable estoppel is not available under the facts adduced thus far. Because the circuit court may take additional evidence and then weigh these equitable considerations, we remand to the circuit court for a hearing on whether it should grant or deny the injunction. *See id.*

*By the Court.*—Judgment reversed and cause remanded with directions.