VILLAGE OF HOBART,
Plaintiff-Appellant,

v.

BROWN COUNTY and Brown County
Solid Waste Management Board,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 2003AP1907. Oral argument March 2, 2005.
—Decided June 15, 2005.*

2005 WI 78

(Also reported in 698 N.W.2d 83.)

For the defendants-respondents-petitioners there were briefs by *William F. White, Mary C. Turke, Christine Cooney Mansour* and *Michael Best & Friedrich LLP,* Madison, and oral argument by *Mary C. Turke.*

For the plaintiff-appellant there was a brief by *Richard C. Yde* and *Stafford Rosenbaum LLP,* Madison, and oral argument by *Richard C. Yde.*

An amicus curiae brief was filed by *Joseph P. Guidote, Jr.,* Appleton, on behalf of Outagamie and Winnebago Counties.

An amicus curiae brief was filed by *Claire Silverman,* Madison, on behalf of League of Wisconsin Municipalities.

¶ 1. N. PATRICK CROOKS, J. Petitioners Brown County and Brown County Solid Waste Management Board (County) appeal a decision of the court of appeals reversing the circuit court's order to grant summary judgment in its favor and dismiss the complaint filed by the Village of Hobart (Village) for a permanent injunction. The Village seeks to enjoin the County from operating a transfer station at the Brown County West Landfill. The County attempts to dismiss the Village's claim on the theory of equitable estoppel.

¶ 2. We conclude that summary judgment was improperly granted to the County. There are still genuine issues of material fact, as well as reasonable alternative inferences to be drawn from undisputed material

facts, sufficient to warrant a trial. This case should be remanded to the circuit court to determine if building the transfer station violated a zoning ordinance, or any related ordinance, of the Village. If the court finds such a violation, and the Village continues in its attempt to enforce that ordinance, the circuit court must weigh the equitable considerations, including the County's equitable defenses, pursuant to this court's ruling in *Forest County v. Goode,* 219 Wis. 2d 654, 579 N.W.2d 715 (1998). We therefore affirm the court of appeals' decision reversing the summary judgment of the circuit court and remand this case for further proceedings consistent with this opinion.

I

¶ 3. All residential, commercial, and industrial solid waste generated by the Oneida Tribe of Indians and the 13 incorporated municipalities in Brown County is received and disposed of by the County. The majority of the solid waste was disposed of at the Brown County East Landfill, until it reached capacity in May 2003. In anticipation of this, the County entered into the "Tri-County Solid Waste Agreement" with Outagamie and Winnebago Counties. Pursuant to this agreement, the County is allowed to dispose of its solid waste at the landfill of one of the participating counties.

¶ 4. In order to address concerns regarding the transportation of refuse to such a landfill, the County decided to construct a new solid waste transfer station to consolidate the waste before hauling it to a landfill in Outagamie or Winnebago County. The County proposed the construction and operation of this transfer station at the West Landfill, located in the Village. The County had purchased this property in May 1976, and operated

it as an active landfill until July 1998. Before its official closure, the County managed the property as an "open area/wildlife refuge." After July 1998, a portion of the former landfill was opened as a pet exercise area.

¶ 5. On February 18, 2002, the Village and the County met, at the Village's request, to discuss the construction of the transfer station at the West Landfill. During this meeting, the Village represented to the County that the proposed transfer station would comply with the West Landfill's current use and zoning. A second meeting between these parties was held one week later, on February 25, 2002, where the County suggested an agreement in which it would own the transfer station and pay the Village an annual franchise fee of $14,000.

¶ 6. The Village unanimously accepted the County's proposal at a public meeting of the Village Board on March 5, 2002.[1] During the meeting, the Village Chairman stated to those present that the County did not require approval from the Village for the construction of the transfer station, because the West Landfill was properly zoned and the transfer station would be a permitted use in the zoning district.

¶ 7. On May 6, 2002, the Village Board, pursuant to its March 5 vote, presented the County with a "Memorandum of Understanding" (MOU), which set

---

. [1] The motion was transcribed as follows:

Motion by Dave Dillenburg to accept proposal #3 which states Brown County to design, permit and build transfer station at the West Landfill, Brown County to contract for operation of transfer station and transport of refuse to the landfill, Brown County would provide all maintenance on building & roadways, town of Hobart would have no liability for transfer station operation and to negotiate a contract for 30 years at $14,000 annually beginning January 2003 and adjusted annually by the CPI-U index. . . .

forth the Village's approval of the construction and operation of the transfer station, and informed the County of the Village's commitment to negotiate a 30–year contract with the County. The MOU provided, in relevant part: "It is the Town of Hobart's intention, per the above-approved motion, to approve the construction and operation of a landfill transfer station at the Brown County West Landfill site in the Town of Hobart."[2] The Village and County signed the MOU on May 1, 2002, and May 6, 2002, respectively.

¶ 8. After receiving the MOU, the County requested a zoning map from the Village. The Village Clerk provided the County with a map that was dated May 17, 2002. The map showed the West Landfill area as "Public Property."[3]

¶ 9. Village officials informed its residents about the transfer station in a letter dated August 13, 2002. The letter, titled "Village Of Hobart Concerns Regarding The Solid Waste Transfer Station On The Brown County West Landfill Property," explained that the County could have constructed the transfer station without Village approval or involvement, because it was a "permitted use." The letter also informed residents that the Board would be discussing the transfer station further on August 20, 2002, and encouraged all interested parties to attend.

¶ 10. On August 21, 2002, the Village's Site Review Committee unanimously approved the County's application. In reliance on this approval, the County

---

[2] During the course of these proceedings, the Town of Hobart became the Village of Hobart.

[3] It is now claimed that the West Landfill is actually zoned as an "A-2 exclusive agricultural district." If that is correct, then pursuant to Village of Hobart Wis. Ordinance § 6.010, the transfer station is neither a permitted use nor a conditional use.

hired a general contractor to begin construction of the transfer station. The contract was awarded for $1,332,076 and required construction to commence on or before October 14, 2002.

¶ 11. On September 24, 2002, the Village Board, in response to a negative reaction from residents, voted to reject the permit and building of the waste transfer site. The Village Board informed the County of its decision, and its rescission of the MOU, in a letter dated October 1, 2002. The Village Clerk then declined to issue the County a sewer permit number to enter on its building permit application. The clerk stated that she had been instructed not to issue the County any permits regarding the transfer station.

¶ 12. The County sought advice from its corporation counsel on whether it could proceed with the construction of the transfer station without the permits.[4] The corporation counsel informed the County that, pursuant to Wis. Stat. § 13.48(13)(a) (2001–02),[5] it did not need a building permit from the Village prior to

---

[4] As of October 1, 2002, the County had spent approximately $130,000 in fees, although construction had not yet begun.

[5] Unless otherwise indicated all references to the Wisconsin Statutes are to the 2001–02 edition.

Wisconsin Stat. § 13.48(13)(a) states in relevant part:

> Except as provided in par. (b) or (c), every building, structure or facility that is constructed for the benefit of or use of the state, any state agency, board, commission or department . . . shall be in compliance with all applicable state laws, rules, codes and regulations but the construction is not subject to the ordinances or regulations of the municipality in which the construction takes place except zoning, including without limitation because of enumeration ordinances or regulations relating to

construction. After the County received this letter, it commenced construction on October 9, 2002.[6]

¶ 13. The Village filed this lawsuit on October 24, 2002, seeking a permanent injunction to prohibit the County from constructing and operating the transfer station at the West Landfill. In its complaint, the Village alleged that construction of the transfer station was in violation of the Village's zoning ordinance, that the County had not obtained any building permits for construction, that the construction and operation of the transfer station was contrary to Village of Hobart Solid Waste and Nuisance Ordinance Section 10.1,[7] and that the County failed to comply with Wis. Stat. § 289.22.

¶ 14. Both parties filed motions for summary judgment. On May 6, 2003, the Brown County Circuit Court, Peter J. Naze, Judge, granted the County's motion for summary judgment, denied the Village's motion, and dismissed its complaint. The court concluded, first, that "the Village should be estopped from asserting that the County has violated the zoning

materials used, permits, supervision of construction or installation, payment of permit fees, or other restrictions.

[6] We note that the transfer station's construction has been completed and that the County has been operating the facility since May 2003. The total cost of construction was approximately $1.3 million.

[7] Section 10.105 of the Village of Hobart Solid Waste and Nuisance Ordinance states:

CONSTRUCTING, MAINTAINING AND OPERATING A SOLID WASTE FACILITY. No Person shall construct, maintain or operate a solid waste facility for disposal, storage or treatment of solid waste within the TOWN, unless the Person has received a valid license from the TOWN Board specifically authorizing construction, maintenance and operation of a solid waste facility. Upon issuance of the license, the licensee shall fully comply with conditions therein.

ordinance." Second, the court held that the County, as an "arm of the State, is not required to obtain local approval since the statutes involved do not apply to Transfer Stations." The Village appealed.

¶ 15. The court of appeals reversed the summary judgment ordered by the circuit court and remanded the case for further proceedings. It held that "a circuit court can apply equitable estoppel to bar a municipality from enforcing a zoning ordinance." *Vill. of Hobart v. Brown County,* 2004 WI App 66, ¶ 2, 271 Wis. 2d 268, 678 N.W.2d 402. However, the court determined that the requirements for equitable estoppel had not been established in this case. Further, the court relied on the case *Forest County v. Goode* for the proposition that a court sitting in equity should weigh "traditional equitable considerations" before deciding whether or not to issue an injunction for a zoning ordinance violation. *See Vill. of Hobart,* 271 Wis. 2d 268, ¶ 16.

¶ 16. In determining that the County did not establish the necessary elements for equitable estoppel, the court of appeals held that the County did not show that it reasonably relied upon the Village's preconstruction actions when it decided to begin construction of the transfer station. Instead, the court determined that the County relied on the advice of its corporation counsel before commencing construction. Finally, the court held that the transfer station's construction and operation could not be justified by either Wis. Stat. § 13.48(13)(a) or on a vested rights theory.[8]

¶ 17. On March 25, 2004, the County filed a petition for review with this court. We accepted review

---

[8] We assume, without deciding, that the County is an "arm of the state." We note, however, that Wis. Stat. § 13.48(13)(a) requires compliance with the zoning ordinances and regulations of the municipality involved.

and now affirm the decision of the court of appeals and remand the matter to the circuit court.

## II

¶ 18. We first address whether summary judgment was appropriately granted. Although our review of the circuit court's grant of summary judgment is de novo, we apply the same methodology as used by the circuit court and court of appeals, and, of course, benefit from those analyses. *See Atkins v. Swimwest Family Fitness Ctr.,* 2005 WI 4, ¶ 11, 277 Wis. 2d 303, 691 N.W.2d 334. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).

¶ 19. Our first step in this analysis is to determine whether the pleadings set forth a sufficient claim for relief. *Trinity Evangelical v. Tower Ins. Co.,* 2003 WI 46, ¶ 32, 261 Wis. 2d 333, 661 N.W.2d 789. "If such a claim is set forth, and the moving party has established a prima facie case for summary judgment, 'we examine the record to determine whether there "exist[s] disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial." ' " *Cent. Corp. v. Research Prods. Corp.,* 2004 WI 76, ¶ 18, 272 Wis. 2d 561, 681 N.W.2d 178 (quoting *Trinity,* 261 Wis. 2d 333, ¶ 32).

¶ 20. We conclude, based on our review of the record, that there are genuine issues of material fact and reasonable alternative inferences that may be drawn from undisputed material facts in this case. Those genuine issues and reasonable alternative inferences include at least the following: whether the map provided by the Village to the County was a Village zoning map, what was the proper zoning and whether the County complied with such zoning ordinance and any related ordinance, what representations were made by the Village Board to the County about the proposed siting for the transfer station and whether such representations created any zoning problems, and whether the letter from the County's corporation counsel advised the County that the zoning for the transfer station was proper, and thus affected the County's claimed reliance on the Village's representations.

¶ 21. While the above list may not be complete, it clearly demonstrates that there are genuine issues of material fact and reasonable alternative inferences to be drawn from undisputed material facts. Under such circumstances, the circuit court should not have granted the County's motion for summary judgment when it did.

III

¶ 22. Upon remand, the circuit court must address whether the construction and operation of the transfer station violated a zoning ordinance, or any related ordinance, of the Village. The County argues that the court of appeals erred in assuming the transfer station violated Village zoning. Specifically, the County argues that the transfer station is either zoned "Public

Property" as indicated in the map provided by the Village or the ordinance is ambiguous and should be construed as including a public use zoning classification. Conversely, the Village argues that no reasonable interpretation of its zoning ordinances would permit the construction of the transfer station. The Village argues that the map that it furnished to the County cannot, by itself, create new zoning districts.

¶ 23. The circuit court apparently did not address the question of whether there was a violation of the Village ordinance, but rather held that the Village was estopped from asserting such a violation. The court of appeals, on the other hand, assumed, based on its review of the record, that the County violated a Village ordinance. We recognize that if the circuit court determines on remand that there was no violation of Village ordinances, the Village's claim for injunctive relief must, of course, fail.

IV

¶ 24. If the circuit court determines that the County violated a Village ordinance, the next issue is whether the Village can be estopped from asserting such a violation. The County argues that a municipality can be estopped from asserting a violation of its ordinances. Specifically, the County disputes the court of appeals' reliance on *City of Milwaukee v. Leavitt,* 31 Wis. 2d 72, 142 N.W.2d 169 (1966). The County contends, instead, that this court should rely on *Russell Dairy Stores v. Chippewa Falls,* 272 Wis. 138, 74 N.W.2d 759 (1956), as it stands for the proposition that estoppel can lie against a municipality. In contrast, the Village argues that the court of appeals correctly determined that a municipality is free to assert a violation of its

ordinances, because any other decision would amount to a determination that the ordinance can be amended without complying with statutory requirements.

¶ 25. We agree with the court of appeals that a municipality cannot be estopped from asserting a violation of its zoning ordinance in court. *See Vill. of Hobart,* 271 Wis. 2d 268, ¶ 25 n.11. In *Leavitt,* we stated that "this court is firmly committed to the principle that estoppel 'will not lie against a municipality so as to bar it from enforcing an ordinance enacted pursuant to the police power.' " *Leavitt,* 31 Wis. 2d at 76 (footnote omitted). In that case, the defendant contended that the city should have been estopped from revoking his occupancy permit and prosecuting the action, because in the past occupancy permits had been granted to tenants for uses violative of the zoning ordinance, and he had spent a considerable sum of money in reliance on the validity of the permit. We disagreed and held that "erroneous acts of municipal officers do not afford a basis to estop the municipality from enforcing its ordinances enacted pursuant to the police power." *Id.* at 76–77. In other words, "citizens have a right to rely upon city officials not having acted in violation of the ordinance, and, when such officials do so act, their acts should not afford a basis for estopping the city from later enforcing the ordinance." *Id.* at 78–79.

¶ 26. More recently, in *Willow Creek Ranch v. Town of Shelby,* 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693, we reaffirmed that the erroneous acts or representations of public officials cannot result in the estoppel of a municipality from asserting that there has been a violation of its zoning ordinance. There, the plaintiff sought to estop the municipality from assert-

ing immunity as a defense and from preventing the operation of a game bird farm due to the misrepresentations of the Town Chairperson. Relying on *Leavitt,* we denied the plaintiff's request for equitable estoppel of the town and county, where they were attempting to prevent the operation of a game bird farm. We held: "Binding municipalities to every representation made by subordinate employees would produce severe results for the municipalities. Endless litigation would ensue over the words of those employees, and important municipal decisions would be delayed pending resolution of those suits." *Id.,* ¶ 50.

¶ 27.   Moreover, we reject the County's reliance on *Russell Dairy Stores.* In that case, a City of Chippewa Falls' ordinance prevented anyone from constructing a driveway by cutting or altering curbs. The plaintiff was granted a permit by the city council to construct a driveway that altered a curb, as he agreed to provide a concrete apron to replace it. The plaintiff constructed his driveway upon reliance on the permit. A few months later, the city council revoked the plaintiff's permit. This court applied the doctrine of equitable estoppel to prevent the city from revoking a permit that it had already granted. We also recognized that the plaintiff had gained a vested right in the permit, which could not later be revoked. *See Russell Dairy Stores,* 272 Wis. 2d at 145–46.

██

¶ 28.   *Russell Dairy Stores* is not controlling for several reasons. First, the County did not have vested rights here like the plaintiff had in that case. We agree with the court of appeals that " 'in order for a developer's rights to vest, the developer must submit an application for a building permit which conforms to the zoning or building code requirements in effect at the

time of the application.' " *Vill. of Hobart,* 271 Wis. 2d 268, ¶ 30 (quoting *Lake Bluff Hous. v. City of S. Milwaukee,* 197 Wis. 2d 157, 177, 540 N.W.2d 189 (1995)). Here, the County claimed that the West Landfill's zoning classification was "public use," which apparently did not conform with the zoning requirements. *See id.* Next, the issuance of the permit in *Russell Dairy Stores* did not violate any law or the city's contract with the state, an issue that was involved in *Willow Creek Ranch,* 235 Wis. 2d 409, ¶ 57. In the present case, however, there is an asserted violation of the Village zoning ordinance and related ordinances.

¶ 29.   Keeping the above cases in mind, we further recognize that we do not apply equitable estoppel " 'as freely against governmental agencies as [we do] in the case of private persons.' " *DOR v. Moebius Printing Co.,* 89 Wis. 2d 610, 638, 279 N.W.2d 213 (1979) (quoting *Libby, McNeill & Libby v. Dept. of Taxation,* 260 Wis. 551, 51 N.W.2d 796 (1952)). " '[I]t is not a happy occasion when the Government's hands, performing duties on behalf of the public, are tied by the acts and conduct of particular officials. . . .' " *Milas v. Labor Ass'n of Wisconsin, Inc.,* 214 Wis. 2d 1, 14, 571 N.W.2d 656 (1997) (quoting *Schuster v. Comm'r of Internal Revenue,* 312 F.2d 311, 317 (9th Cir. 1962)).[9] If we allow the

---

[9] We have typically refused to apply estoppel against the government when its application would interfere with the police power for the protection of the public health, safety, or general welfare. *See DOR v. Moebius Printing Co.,* 89 Wis. 2d 610, 639, 279 N.W.2d 213 (1979) (citing *State v. Chippewa Cable Co.,* 21 Wis. 2d 598, 608–09, 124 N.W.2d 616 (1963); *Park Bldg. Corp. v. Indus. Comm'n,* 9 Wis. 2d 78, 87–88, 100 N.W.2d 571 (1960); *Town of Richmond v. Murdock,* 70 Wis. 2d 642, 653–54, 235 N.W.2d 497 (1975); *McKenna v. State Highway Comm'n,* 28 Wis.

estoppel doctrine to hinder the government's exercise of its police power, we will be "expos[ing] a significant number of persons to a risk the legislature has determined to be contrary to their safety, welfare, health or morals." *Moebius,* 89 Wis. 2d at 640. This is particularly true in the context of zoning. In Wis. Stat. § 62.23(7)(a), the legislature expressly states that zoning regulations are "for the purpose of promoting health, safety, morals or the general welfare of the community. . . ."

¶ 30.  We do not dispute that "zoning may be the most essential function performed by local government, since it allows a municipality to protect its citizens' quality of life." *Lake Bluff Hous. v. City of S. Milwaukee,* 2001 WI App 150, ¶ 25, 246 Wis. 2d 785, 632 N.W.2d 485. Thus, generally we will not allow estoppel to be invoked against the government for the erroneous acts or representations of its officials. To do so would elevate the mistake of the official above the needs of the citizens and their right to rely on the laws enacted. When we read the cases that we discussed herein, together with *Forest County v. Goode* and *Town of Delafield v. Winkelman,* 2004 WI 17, 269 Wis. 2d 109, 675 N.W.2d 470, we conclude that a municipality cannot be estopped from asserting a violation and seeking to enforce its ordinances, but that a circuit court has authority to exercise its discretion in deciding whether to grant enforcement.

V

¶ 31.  The final issue we address is the proper procedure for the circuit court to apply if it finds that

2d 179, 186, 135 N.W.2d 827 (1965); *Milwaukee v. Milwaukee Amusement, Inc.,* 22 Wis. 2d 240, 252–53, 125 N.W.2d 625 (1964)).

there was a violation of the Village's zoning ordinance, or any related ordinance, and the municipality asserts such a violation and attempts to enforce it. In this case, the Village asked for a permanent injunction against the operation of the transfer station by the County, which clearly is a request for enforcement of its claimed applicable ordinances.

■■■

¶ 32.  This court has established that when a party seeks to enforce an ordinance by pursuing an injunction, or other such relief, the circuit court can exercise its discretion in deciding whether, and in what form, to grant the injunctive relief. *See Forest County v. Goode,* 219 Wis. 2d at 670. Specifically, we have determined that "[i]njunctive relief is not ordered as a matter of course, but instead rests on the sound discretion of the court, to be used in accordance with well-settled equitable principles and in light of all the facts and circumstances of the case." *Id.; see McKinnon v. Benedict,* 38 Wis. 2d 607, 616, 157 N.W.2d 665 (1968). Thus, in this case, the circuit court must determine if its equitable power to deny an injunction, or any other enforcement mechanisms, is appropriate under the totality of the circumstances presented.

¶ 33.  For guidance, we look to our decision in *Forest County v. Goode.* In *Goode,* the county brought an action against the owner of lakefront property, seeking to enforce its zoning ordinance. The zoning administrator met with Goode and, together, they measured and staked a distance of 50 feet from the ordinary high water mark to the location of his new house, as required under the county zoning ordinance. Goode then obtained a building permit to construct his new house 50 feet from the ordinary high water mark. Upon later determining that the distance did not meet the

minimum setback requirement, the county sought to enforce the zoning ordinance. Goode responded that the violation was unintentional. In *Goode,* we determined that a circuit court retains its equitable power to deny injunctive relief, even if the plaintiff has proven a prima facie case of zoning ordinance violation. *See Goode,* 219 Wis. 2d at 669.

¶ 34. In doing so, we provided guidance on how to apply equitable considerations:

> [T]he circuit court should take evidence and weigh any applicable equitable considerations including the substantial interest of the citizens of Wisconsin ... the extent of the violation, the good faith of other parties, any available equitable defenses such as laches, estoppel or unclean hands, the degree of hardship compliance will create, and the role, if any, the government played in contributing to the violation.

*Id.* at 684. Ultimately, this court concluded that upon the determination of an ordinance violation, the proper procedure for a circuit court is to grant the injunction, except when it is presented with compelling equitable reasons to deny it. *Id.*[10]

¶ 35. As a result of this holding, it is argued that the zoning violator now has " 'two kicks at the cat,' once to defend against the claim that there is a violation and, second, to defend against enforcement of a sanction for that violation." *Vill. of Hobart,* 271 Wis. 2d 268, ¶ 25 n.11 (quoting *Town of Delafied v. Winkelman,* 2003 WI

---

[10] This holding was reaffirmed recently by our decision in *Town of Delafield v. Winkelman,* 2004 WI 17, 269 Wis. 2d 109, 675 N.W.2d 470. The court held that "when a governmental body exercises its authority pursuant to either Wis. Stat. §§ 59.69(11) or 62.23(8) and seeks injunctive relief, the circuit court retains the power to deny the relief sought and the property owners can defend themselves in equity." *Id.,* ¶ 28.

App 92, ¶ 1, 264 Wis. 2d 264, 663 N.W.2d 324). The County now argues, in its second "kick at the cat," that if a violation is established the Village should be estopped from enforcing any applicable ordinance. Specifically, it contends that it reasonably relied on the Village's zoning representation, and that such reliance was not negated by asking its corporation counsel for legal advice on the necessity of a building permit for the transfer station. The County argues that the court should use its equitable powers and deny the Village an injunction against the County. The Village, on the other hand, claims that the County did not reasonably rely on any of its actions when it decided to commence construction of the transfer station.

¶ 36. We recognize, as did the court of appeals, that the test for equitable estoppel consists of four elements: " '(1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment.' " *Vill. of Hobart,* 271 Wis. 2d 268, ¶ 18; *see also Milas,* 214 Wis. 2d at 8. The court of appeals, based upon its review of the facts, held as a matter of law that the County did not prove all of the elements of equitable estoppel. *Vill. of Hobart,* 271 Wis. 2d 268, ¶ 20. Specifically, the court determined that the County did not commence construction of the transfer station in reliance on the Village's representations, but rather on advice from its corporation counsel: "Counsel advised the County that, pursuant to Wis. Stat. § 13.48(13)(a), the Village's turnabout could not stop the County from building the transfer station, even though the County did not have the necessary building permits. . . . It is

647

undisputed that in reliance upon this advice, the County commenced construction." *Id.*

¶ 37.   The issue regarding the meaning of and reliance on the corporation counsel's letter remains in dispute. The court of appeals may have misinterpreted, and thus overemphasized, the County's reliance on the advice given by its corporation counsel. A fair reading of the letter does not necessarily lead to the conclusion that the corporation counsel asserted that there was no zoning problem.[11] The circuit court must determine whether there has been a violation of the Village's

[11] The letter from the corporation counsel is as follows:

You have requested an opinion regarding two issues, both of which involve the proposed transfer station at the west landfill site located in the Village of Hobart. The first question concerns a May 19, 1976 resolution of the Brown County Board of Supervisors dealing with the west landfill site, copy attached. This resolution is clearly one which gives the Solid Waste Management Board authority to utilize the landfill site for as long as it deems necessary as part of the Solid Waste management system for Brown County. This resolution is of no legal significance whatsoever in prohibiting the proposed transfer station on County owned property at the west landfill in the Village of Hobart. This property has continuously been used by the Solid Waste Management Board for waste management purposes, and a transfer station would be consistent with that continued use. Nothing in this resolution, and particularly in the operative "BE IT RESOLVED" paragraphs, removes any authority from the Solid Waste Management Board from utilizing the west landfill site for a transfer station.

The second issue involves the question of whether or not local permits are required for construction of the transfer station. Sec. 13.48(13), Stats., provides that this type of project is not subject to local ordinances or regulations relating to permits, materials used, supervision of construction or installation, payment of permit fees, or other restrictions. This provision was interpreted by the Attorney General's office in January, 1997 to the effect that County building projects are governed by this statute, and as a result, the Solid Waste Management Board is not required to obtain any Village permits for the construction of this transfer station.

ordinances, and if the Village continues in its attempt to enforce its ordinances by seeking injunctive relief, whether, consistent with *Forest County v. Goode* and the equitable considerations outlined therein, the court should enforce any such ordinance and grant the Village an injunction.

## VI

¶ 38. In sum, we conclude that summary judgment was improperly granted to the County. There are still genuine issues of material fact, as well as reasonable alternative inferences to be drawn from undisputed material facts, sufficient to warrant a trial. We also conclude that this case should be remanded to the circuit court to determine if building the transfer station violated a zoning ordinance, or any related ordinances, of the Village. If the court finds such a violation, and the Village continues in its attempt to enforce that ordinance, the circuit court must weigh the equitable considerations, including the County's equitable defenses, pursuant to this court's ruling in *Forest County v. Goode*. For the above stated reasons, we affirm the court of appeals' decision reversing the summary judgment of the circuit court, and remand the case for further proceedings consistent with this opinion.

*By the Court.*— The decision of the court of appeals is affirmed.

¶ 39. DAVID T. PROSSER, J. (*concurring*). I

The relevant portion of the letter relied upon by the court of appeals reads as follows: "This property has continuously been used by the Solid Waste Management Board for waste management purposes, and a transfer station would be consistent with that. . . ."

agree with the mandate to remand this case to the circuit court for the resolution of disputed facts. I also applaud the court's reaffirmation of *Forest County v. Goode,* 219 Wis. 2d 654, 579 N.W.2d 715 (1998). But I disagree with some of the court's analysis and its conclusion that "a municipality cannot be estopped from asserting a violation of its zoning ordinance in court." Majority op., ¶ 25. As a legal proposition, the quoted statement is too broad, and it sends the wrong message to local governments.

¶ 40.   This case involves zoning. There are many different scenarios in which zoning issues may be litigated. They range from a private property owner's suit against a municipality for its refusal to issue a needed permit to a municipality's suit to raze a building that violates a zoning ordinance.

¶ 41.   A municipality that wishes to enforce a zoning ordinance may become involved in litigation as either a plaintiff or a defendant. But, according to the majority, the party status of the municipality makes a big difference in the outcome of the dispute.

¶ 42.   In this case, Brown County and the Village of Hobart had extensive dealings over a period of six months. The Village Board was cooperative and reassuring, and the County acted in reliance on its representations and official actions. Then the Village changed its position and ordered its clerk to deny the County a sewer permit number for a building permit. By the time the Village changed its position, the County had incurred approximately $130,000 in engineering fees and it had *awarded* a contract to build the transfer station. The contract provided that construction was to commence no later than October 14, 2002. The County began construction without receiving building permits, arguably in violation of the Village's zoning ordinance.

¶ 43.   In theory, the County could have waited and sought a declaratory judgment against the Village on the zoning question or a writ of mandamus on the building permits. However, its failure on a declaratory judgment would have hurt the County's position, and mandamus may not have been a viable remedy. *See Beres v. New Berlin,* 34 Wis. 2d 229, 231–32, 148 N.W.2d 653 (1967). Taking the time to seek a conditional use permit from Village officials and then appealing their refusal to a board of adjustment, would not have been a fruitful option for the County in terms of either timing or result.

¶ 44.   Fortunately, the Village brought an *enforcement* action. In this litigation the County was the defendant and it was entitled to raise all defenses that are authorized in *Goode* ("Equitable defenses, such as laches, *estoppel,* or unclean hands should . . . be weighed in appropriate cases."). *Goode,* 219 Wis. 2d at 681–82 (emphasis added).

¶ 45.   In its decision, the court of appeals said: "We conclude that when considering whether to issue an injunction for a zoning violation, a circuit court can apply equitable estoppel to bar a municipality from *enforcing* a zoning ordinance." *Vill. of Hobart v. Brown County,* 2004 WI App 66, ¶ 2, 271 Wis. 2d 268, 678 N.W.2d 402 (emphasis added). "[E]quitable estoppel can be a basis upon which the trial court refuses to grant injunctive relief for a zoning violation." *Id.,* ¶ 16.

¶ 46.   I agree with this conclusion but am not certain where the majority stands. Even if the majority agrees with the court of appeals, it is forcing a landowner like Brown County to *violate* the zoning ordinance before it can obtain equitable relief. This strikes me not only as risky for the landowner but also nonsensical as a principle of law.

¶ 47. What I do not understand, given the court of appeals' conclusion about equitable estoppel as a defense, is why that court cited *City of Milwaukee v. Leavitt*, 31 Wis. 2d 72, 76, 142 N.W.2d 169 (1966), to the effect that "While municipal and other government units are not wholly immune from application of the doctrine of equitable estoppel, this court is firmly committed to the principle that estoppel 'will not lie against a municipality so as to bar it from *enforcing* an ordinance enacted pursuant to the police power." *Vill. of Hobart*, 271 Wis. 2d 268, ¶ 25 (emphasis added).

¶ 48. This quote comes from a case in which a city was revoking the defendant's occupancy permit. This quote comes from a final *enforcement* action. This quote is simply inconsistent with *Goode* and with the use of equitable estoppel in a zoning *enforcement* action.[1]

¶ 49. The majority not only affirms the quote but also adds that "If we allow the estoppel doctrine to hinder the government's exercise of its police power, we will be 'expos[ing] a significant number of persons to a risk the legislature has determined to be contrary to their safety, welfare, health or morals.' This is particu-

---

[1] Moreover, the facts in *City of Milwaukee v. Leavitt* are markedly different from the facts in this case. In *Leavitt*, the court held that "erroneous acts of municipal *officers* do not afford a basis to estop the municipality from enforcing its ordinances enacted pursuant to the police power." *Leavitt*, 31 Wis. 2d 72, 76-77, 142 N.W.2d 169 (1966) (emphasis added). In this case, the County relied not only on the acts of individual officers, but also on the acts of the highest municipal body, the Village Board. *See* majority op., ¶¶ 5-7. Individual municipal officers may act roguishly. The Village Board's imprimatur lends an added sense of credence to individual officers' representations.

larly true in the context of zoning." Majority op., ¶ 29 (internal citation omitted). This language is not consistent with *Goode.*

¶ 50.  On the facts of this case, the County is being penalized for consulting with its corporation counsel and following his advice. What was the County supposed to do? If the County had surrendered to the Village on the transfer station and sued the Village for money damages, it would not have solved the solid waste problem that precipitated this situation.

¶ 51.  If the County had immediately sought a mandamus action to secure building permits, it should have been able to invoke equitable estoppel so that the Village could not assert its zoning ordinance as a defense. Of course, the County would have had to prove its case. However, I see nothing in the majority opinion that suggests that this option is a possibility.

¶ 52.  The bottom line is this: If local officials act irresponsibly, leading on landowners (including counties) and then pulling the rug out from under them, there ought to be a way for the landowners to obtain relief without first violating the zoning ordinance. Equitable estoppel, with stringent requirements to obtain it, strikes me as a reasonable solution.

¶ 53.  Because the majority opinion is internally inconsistent and undermines the rule in *Goode,* I respectfully concur.

¶ 54.  I am authorized to state that Justice JON P. WILCOX and Justice LOUIS B. BUTLER, JR. join this opinion.