VILLAGE OF HOBART,
Plaintiff-Appellant,

v.

BROWN COUNTY and
Brown County Solid Waste Management Board,
Defendants-Respondents.†

Court of Appeals

*No. 2007AP891. Submitted on briefs September 14, 2007.*
*—Decided October 18, 2007*

## 2007 WI App 250

(Also reported in 742 N.W.2d 907.)

† Petition to review denied 2/21/08.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ted Waskowski* and *Richard C. Yde* of *Stafford Rosenbaum LLP*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *William F. White*, *Mary C. Turke*, and *Paul D. Barbato* of *Michael Best & Friedrich, LLP*, Madison.

Before Dykman, Lundsten and Bridge, JJ.

¶ 1. DYKMAN, J. The Village of Hobart appeals from an order denying its request for an injunction to prevent Brown County from operating a waste transfer station in Hobart. The Village contends that the trial court erred in finding that the County did not violate any Village ordinances and that even if it did, equitable principles justified denying the injunction. We conclude that the record establishes that the County violated the Village zoning ordinance and does not support the court's finding that equitable principles justify denying an injunction. Accordingly, we reverse and remand with instructions.

### Background

¶ 2. The following is taken from trial testimony and exhibits. In early 2002, representatives of the

266

County and of the Village[1] entered discussions for the County to site a waste transfer station at a closed landfill in Hobart.[2] Village representatives told the County that the zoning at the closed landfill was appropriate for a waste transfer station. In May 2002, the Village and the County entered into a Memorandum of Understanding stating the Village's intention to approve a County waste transfer station at the closed landfill.

¶ 3. In September 2002, the County requested a holding tank permit from the Village. The Village's clerk/treasurer informed the County that the Village would not issue any permits to the County for the waste transfer station. In October 2002, the Village notified the County in writing that it had voted unanimously to rescind its approval of the memorandum, based on various problems it had identified with operating a waste transfer station at the closed landfill. The Village asked the County to withdraw its plans to site its waste transfer station in Hobart.

¶ 4. The County sought advice from its corporation counsel on how to proceed, because it had already invested time and money in planning the waste transfer station to be located in Hobart. The County believed at that point it would be unable to obtain any permits from the Village. The County's corporation counsel issued an opinion stating that the County could legally proceed with its waste transfer station without any approval or permits from the Village. The County began

---

[1] At that time, the Village of Hobart was the Town of Hobart. For clarity, we refer only to the Village. The parties attach no legal significance to the Town's transition to a Village.

[2] There are two landfills in Hobart, an east landfill and a west landfill. Only the west landfill is at issue in this case. Thus, our references to the landfill in Hobart are to the west landfill.

constructing the waste transfer station at the proposed site. On October 24, 2002, the Village filed this action for an injunction to prohibit the County from building and operating its waste transfer station.

¶ 5. The trial court granted summary judgment to the County, finding that the Village was equitably estopped from asserting that the County's waste transfer station violated the Village's zoning ordinance. The Village appealed, and we reversed. *Village of Hobart v. Brown County*, 2004 WI App 66, ¶¶ 1–2, 271 Wis. 2d 268, 678 N.W.2d 402. We concluded that "a municipality cannot be estopped from seeking to enforce a zoning ordinance violation," although "a trial court can refuse to issue an injunction for a zoning violation on the grounds of equitable estoppel." *Id.*, ¶ 25 & n.11. We concluded that the waste transfer station was in an exclusive agricultural district under the Village of Hobart zoning ordinance and thus in violation of the Village's zoning, but remanded for the trial court to weigh equitable considerations to determine whether to grant an injunction. *Id.*, ¶¶ 27, 32.

¶ 6. On review, the supreme court affirmed. *Village of Hobart v. Brown County*, 2005 WI 78, ¶ 2, 281 Wis. 2d 628, 698 N.W.2d 83. It concluded that there were issues of material fact and reasonable alternative inferences to be drawn from undisputed material facts that precluded summary judgment. *Id.* The court explained, however, that because the trial court failed to address whether the waste transfer station violated the Village zoning ordinance, finding instead that the Village was estopped from asserting any violation, the record was not clear as to whether a zoning violation actually occurred. *Id.*, ¶¶ 20–23. The court remanded for the trial court to determine first whether the County violated any Village ordinance, and then for it

to weigh equitable considerations to determine whether to issue an injunction. *Id.*, ¶¶ 32, 38.

¶ 7. Following a trial on the two issues remanded by the supreme court, the trial court found that the waste transfer station did not violate the Village zoning ordinance. The court reasoned that "[t]he use, the history and the law estop the Village from taking any other position."[3] The court then found that even if there had been a zoning violation, equity would prevent its issuing an injunction. The court found that the County's reliance on the Village's interpretation of its zoning as allowing the waste transfer station was reasonable, that the Village had "unclean hands," and that no public interest would be served by closing the station. Thus, the court denied the Village's request for an injunction to prevent the County from operating the waste transfer station. The Village appeals.

## Standard of Review

¶ 8. This case requires that we interpret the Village of Hobart's zoning ordinance and determine the application of equitable estoppel. We independently interpret zoning ordinances. *FAS, LLC v. Town of Bass Lake*, 2007 WI 73, ¶ 9, 301 Wis. 2d 321, 733 N.W.2d 287. Further, once the facts and reasonable inferences therefrom in a case have been established, whether equitable estoppel has been established is a question of law that

---

[3] We note that the supreme court's remand clearly stated that the Village could not be estopped from asserting a violation of its zoning ordinance. *Village of Hobart v. Brown County*, 2005 WI 78, ¶ 25, 281 Wis. 2d 628, 698 N.W.2d 83. On this appeal, the County does not assert that the Village is estopped from asserting a violation, only that no violation took place. We thus need not address this issue further.

we determine independently. *Milas v. Labor Ass'n of Wisconsin, Inc.*, 214 Wis. 2d 1, 8, 571 N.W.2d 656 (1997).

## *Discussion*

¶ 9. The Village argues that the trial court erred in denying it an injunction because (1) the record establishes that the County violated the Village zoning ordinance when it constructed the waste transfer station at the closed landfill in Hobart; and (2) the record does not establish equitable considerations sufficient to justify denying an injunction. We agree.

### *(1) Ordinance Violations*

¶ 10. The Village asserts that the County violated the Village zoning ordinance by constructing a waste transfer station without a building permit in an area designated A-2 agricultural exclusive. The County responds that the Village did not meet its burden to prove a zoning violation. The County argues that the Village's zoning ordinance expressly incorporates its maps, which zone the waste transfer station site "public use." Alternatively, the County argues that the waste transfer station is a legal non-conforming use of the area. We agree with the Village.

¶ 11. The parties agree that the following provision of the Village of Hobart zoning ordinance establishes Hobart's zoning:

> The location and boundaries of the districts established by this ordinance are set forth on the zoning map, entitled "Zoning District Map for the Town of Hobart, Brown County, Wisconsin," dated October 6, 1986, which are incorporated herein and hereby made a part of this ordinance. The said map, together with

270

everything shown thereon and all amendments thereto, shall be as much a part of this ordinance as though fully set forth and described herein.

VILLAGE OF HOBART, WIS., ZONING ORDINANCE § 6.005(B) (1991). They disagree, however, as to the meaning of that provision.

¶ 12. The Village contends that the ordinance clearly states that the zoning districts are set forth in the October 6, 1986 official zoning map. The parties agree that the 1986 map establishes the site of the waste transfer station as an A-2 Exclusive Agricultural District, which does not allow waste transfer stations. The County argues that the last sentence in the disputed provision, stating that "[t]he said map, together with everything shown thereon and all amendments thereto, shall be as much a part of this ordinance as though fully set forth and described herein," establishes that the other purported official zoning maps, several of which are posted in the Village's City Hall and one of which was provided to the County, are incorporated into the zoning ordinance. The parties agree that the other versions of the zoning map designate the waste transfer station site as "public use." The County asserts that the Village's other versions of the zoning map are "amendments" to its official map, and thus the waste transfer station site has been re-zoned to public use.

¶ 13. The problem with the County's argument is that it is asking us to equate the printing of a map with zoning. But the Village may not effect a zoning change by simply printing a new map. *See Gloudeman v. City of St. Francis*, 143 Wis. 2d 780, 784, 422 N.W.2d 864 (Ct. App. 1988) (explaining that "ordinances which change

the zoning classification of a specific parcel of land must comport with statutory notice requirements" because "the public ha[s] a right to appear and voice objections to the proposed ordinance"). Further, even accepting the County's argument that the Village may re-zone land through amendments to its official zoning map, we do not agree that printing a map labeled "official map" is equivalent to amending an official map.[4] If the County's argument is carried to its logical conclusion, then anyone seeking a permit would be subject to the Village's arbitrary changing of its zoning, since all the Village would have to do is print a map with new zoning districts and call that an "amendment" to its official map.[5] This would be contrary to law in Wisconsin

---

[4] The County argues that the Village was in the best position to prove that no other "official map" was adopted after 1986 and failed to do so. Specifically, the County points to testimony by the program manager for the Brown County Land Conservation Department that the Village provided him a map in 1996 that was labeled "official zoning map" and that stated it had been adopted by the Hobart Town Board on June 10, 1996. However, the Village did refute this evidence, submitting the minutes of the Village's board meeting on June 10, 1996, showing that no new map was adopted on that date. The Village also presented testimony of its Village Administrator, who testified that the 1986 map was the last official map adopted by the Village, and that the Village did not follow the procedure to adopt another zoning map. While neither party explains what process the Village must undertake to "amend" its official zoning map, the Village Administrator testified as to the procedure for the Village to adopt a new official map. We conclude that it is sufficient for purposes of our discussion that the record establishes that the Village did not adopt a new official map after 1986.

[5] The County argues that the 1986 "official map" is invalid because it does not display the various amendments to the Village zoning ordinance in the subsequent twenty plus years. We do not agree. The County has cited no authority stating that

establishing safeguards to protect the public from un-noticed or secret changes in zoning.[6] *See, e.g., Gloude-man*, 143 Wis. 2d at 784–85.

██

¶ 14. Additionally, we agree with the Village that even if the County had established that the waste transfer station site was re-zoned as "public use," the transfer station would not be a permitted use. The Village's zoning ordinance sets out the designated zoning areas, and does not establish or define a "public use" designation. Without an ordinance's description of what uses would be permitted in a "public use" district, it would be impossible to tell whether a proposed use would be permitted or prohibited. The County has not ex-plained why a waste transfer station would be a permit-ted use in a "public use" district, even if one existed.

¶ 15. The County argues alternatively that the waste transfer station is a legal non-conforming use because the site was previously used as an operating landfill and the County had ongoing duties to supervise and maintain the closed landfill. We disagree.

---

an official zoning map must reflect all valid amendments to a zoning ordinance in order to retain validity. Furthermore, the County has not asserted that a valid amendment to the Village's zoning ordinance changed the zoning at issue here. Thus, we need not address the effect a valid change to the zoning ordinance would have on the official map.

[6] We do not address the propriety of the Village's labeling various conflicting maps as its "official zoning map" in this portion of our discussion. Rather, we limit our discussion to the legal effect those maps have on the Village's zoning. We agree with the County that the Village's actions in providing the County with a map labeled "official zoning map" that displayed the zoning of the proposed site for the waste transfer station as "public use" is a factor to weigh in determining whether equity prevents an injunction.

¶ 16. "A nonconforming use is an active and actual use of land and buildings which existed prior to the commencement of the zoning ordinance and which has continued in the same or a related use until the present." *Walworth County v. Hartwell*, 62 Wis. 2d 57, 60, 214 N.W.2d 288 (1974). A valid non-conforming use of land may be continued despite its being contrary to present zoning. *See id.* at 61. However, because

> the spirit of zoning is to restrict a nonconforming use and to eliminate such uses as quickly as possible[,] [t]he law does not tolerate the continuance of nonconforming uses if the use is changed and the law will not condone an activity simply because it takes place on the premises.

*Waukesha County v. Pewaukee Marina, Inc.*, 187 Wis. 2d 18, 29, 522 N.W.2d 536 (Ct. App. 1994) (citation omitted). Thus, even if an original use of land is a legal non-conforming use, "[t]he violation of the nonconforming use by expansion or enlargement which changes the use invalidates the legal nonconforming use as well as the illegal change." *Id.* at 31.

¶ 17. The County does not assert that it operated a waste transfer station at the Hobart landfill prior to enactment of the current zoning. Instead, the County argues that its use of the site as a landfill and its ongoing obligation to monitor and maintain the closed landfill establishes the waste transfer station as a legal non-conforming use. The County argues that the original use of the land as an operating landfill, its subsequent use as a closed landfill, and the new use as a waste transfer station are all for "waste disposal purposes," and are thus all legal non-conforming uses. We disagree. In *Pewaukee Marina*, we explained that while

an expansion as a result of an increase of a historically allowed use is allowed, "if there is an identifiable change in the use, the enlargement is illegal." *Id*. at 27. We also rejected the landowner's argument that the court should have asked the jury whether his additions to his marina were all "marina related." *Id*. at 27 n.3. We explained that "[t]he question is not whether the uses are related to a marina but rather, what kind of marina enterprises existed at the time of the ordinances' enactment and have those marina enterprises changed." *Id*. We disagreed with the landowner's argument that "once a marina, always a marina, even though marina business itself is transformed." *Id*. Rather, we explained that "[i]f what the business puts into the stream of commerce changes or if the type of service given changes, then an identifiable change has occurred." *Id*. We cannot construe the construction and operation of a waste transfer station as simply an expansion of operating a landfill or maintaining a closed landfill.[7] Rather, converting the landfill to a waste transfer station is a changed use that is not entitled to legal non-conforming status.

¶ 18. Finally, the County does not contest the fact that it constructed the waste transfer station without a building permit, contrary to the Village's zoning ordi-

---

[7] In finding that the waste transfer station was a legal non-conforming use, the trial court said only that the use of the landfill site has been "public" for many years and thus public uses are legal non-conforming uses. This is not the correct test. The testimony at trial explained the difference between a waste transfer station, which involves depositing waste and then transferring it to much larger trucks for distribution to other sites, and operating and maintaining a landfill, which receives and stores waste. We do not agree that the former is encompassed in the latter.

nance. *See* Village of Hobart, WIS., ZONING ORDINANCE § 6.021(E)(1) (1991). The County argues that it was advised by its corporation counsel that it could legally construct the waste transfer station without a building permit from the Village, and that it should not be punished for exercising its right to be represented by counsel. The County does not argue that it was not subject to the Village's permit requirements, only that it was justified in relying on its counsel's advice in proceeding without one. While we agree that it would be improper to punish the County for acting on the advice of counsel, we do not agree that the County is entitled to immunity for acting on that advice. That is, the fact that the County's corporation counsel erroneously advised it to proceed with constructing a waste transfer station does not mean that the County is not subject to the Village's permit requirements.

¶ 19. Thus, having determined that the County did violate the Village's zoning ordinance, we turn to equitable considerations to determine whether an injunction should nevertheless be denied.

*(2) Equitable Considerations*

¶ 20. The Village contends that equitable considerations do not justify denying it an injunction because its actions did not induce the County to construct a waste transfer station without a building permit and contrary to Village zoning, and the public interest is served by allowing the Village to enforce its zoning ordinance. The County responds that the trial court correctly denied the Village an injunction on equitable principles because the County reasonably relied on the Village's assurances that the waste transfer station site was properly zoned and the public interest is best served by allowing the transfer station to continue

operations. We agree with the Village that the facts of this case do not establish the elements of equitable estoppel.

¶ 21. Equitable estoppel requires the party asserting it as a defense to prove by clear, satisfactory and convincing evidence the following elements: (1) action or non-action, (2) by the opposing party, (3) which induced the party claiming estoppel to reasonably rely on the opposing party, either in action or non-action, and (4) that the reliance was to the claiming party's detriment. *Milas*, 214 Wis. 2d at 11–12 & n.14. Here, the County argues that the Village's actions in repeatedly communicating to the County that the closed landfill in Hobart was properly zoned for a waste transfer station caused the County to reasonably rely on those assurances in constructing a waste transfer station there. We disagree.

¶ 22. The trial testimony established that prior to the County's beginning construction in October 2002, the County knew that the Village no longer planned to approve the waste transfer station. When the County attempted to obtain a holding tank permit, it was informed by the Village's clerk/treasurer that the Village would not issue any permits in relation to the proposed waste transfer station. The County also received a letter from the Village rescinding the memorandum. Indeed, the County only lists Village assurances of proper zoning through August, 2002. As of early October 2002, then, despite the Village's prior assurances that the zoning of the closed landfill was appropriate for a waste transfer station, the County knew that the Village did not plan to approve the waste

transfer station.[8] At that point, the County made its own decision to commence construction without applying for a building permit to obtain a zoning decision by the Village. Whatever reliance on the Village's assertions the County may claim in its planning of the waste transfer station, it has not established that it reasonably believed the Village assured proper zoning when it began construction.[9]

¶ 23. Had the County applied for a building permit and received a rejection, the County would have understood the Village's position on zoning and could have proceeded legally from there. The County's belief that the site was properly zoned and that the Village was resisting due to an outcry from its residents does not validate its decision to bypass the Village zoning requirements. It is no defense to an ordinance enforcement action that the violator ignored the ordinance.

¶ 24. Finally, we do not agree that the public interest is best served by denying an injunction. We have said that "[t]he municipalities, and the citizens who reside there, have a right to enforce their zoning laws." *Lake Bluff Hous. Partners v. City of South*

---

[8] The County argues that because the October 2002 letter from the Village to the County did not reference zoning, the County believed that the Village was not rescinding its earlier statements that the area was properly zoned. Even accepting this assertion, we do not agree that the County's decision to construct the waste transfer station without Village approval was reasonable.

[9] This conclusion also negates the trial court's finding that the Village should be denied an injunction based on "unclean hands." The "clean hands" doctrine only applies where a party's bad acts caused the harm from which it seeks relief. *Security Pac. Nat'l Bank v. Ginkowski*, 140 Wis. 2d 332, 339, 410 N.W.2d 589 (Ct. App. 1987).

*Milwaukee*, 2001 WI App 150, ¶ 29, 246 Wis. 2d 785, 632 N.W.2d 485. Further, "zoning may be the most essential function performed by local government in that it permits the municipality to protect its citizens' quality of life." *Id.*, ¶ 25. On a balance of equities, we cannot say this is "one of those rare cases where equity overcomes the [Village's] legal right and duty to secure compliance with its zoning classification." *See id.*, ¶ 29. The record reveals that the County's decision to construct the waste transfer station was based on its own decision to move forward without Village approval, not on the Village's representation that it could do so. Because the trial court's findings that the County did not violate the Village zoning ordinance and that equity prevented an injunction are not supported by the record, we reverse and remand for proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for proceedings consistent with this opinion.